No.   92-578

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

CHAD EMERY and LAURA EMERY, for herself
and as next friend to CHAD EMERY,

Plaintiffs and Appellants,

-vs-

FEDERATED FOODS, INC., WEST COAST GROCERY
COMPANY and its successor-in-interest
SUPER VALU STORES, INC., MARK SORENSON, M.D.,
and KIDD & COMPANY, INC.,

Defendants and Respondents.

APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Frank B. Morrison, Jr., Morrison Law Offices,
Kalispell, Montana (argued)

For Respondent:

Sherman  V.  Lohn  (argued);  Garlington,  Lohn  &
Robinson, Kalispell, Montana (for Federated Foods)

Leonard Kaufman and James Ramlow (argued); Murray,
Kaufman, Vidal, Gordon & Ogle, Kalispell, Montana
(for Mark Sorenson, M.D.)

FILED

NOV 18 1993

Ed Smith
Filed: CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted:   August 30, 1993

Decided:   November 18, 1993

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Chad Emery appeals from an order of the Fourth Judicial District Court, Missoula County, granting summary judgment to Federated Foods, Inc., Kidd and Co., Inc., West Coast Grocery Co. and its successor-in-interest Super Valu Stores, Inc. (collectively hereafter Federated Foods). He also appeals an order changing venue to Flathead County on a negligence claim against Mark Sorenson, M.D. We reverse and remand.

We phrase the issues on appeal as follows:

1) Did the District Court err in changing venue to Flathead County on Emery's negligence claim against Dr. Sorenson?

2) Did the District Court err in refusing to consider the affidavits of Dr. Loube and Dr. Dingus?

3) Did the District Court err in granting summary judgment for Federated Foods on Emery's products liability claim?

4) Did the District Court err in declining to rule on the admissibility of a report compiled by the American Academy of Pediatrics?

In 1987, Laura Emery and her two children, Zach, age 7 and Chad, age 2 1/2, lived in Kalispell, Montana. On November 3, 1987, Laura finished her shift as a waitress and stopped at the Price Plus grocery store. At her children's request, she purchased a bag of generic large marshmallows, scanning the label before making her choice. When the family returned home, Laura put the marshmallows on the top shelf of her kitchen cupboard, out of the children's reach.

2

The next morning around 7:15 a.m., Ken Kerzman, a friend of Laura's, stopped by to shower and to complete paperwork at Laura's kitchen table. Although Laura had not risen from her bed on the living room couch, the children asked her if they could have some marshmallows before breakfast; she consented. Zach climbed onto the kitchen counter and retrieved the bag of marshmallows from the top shelf of the cupboard. Zach gave Chad some marshmallows and took some for himself. Chad began to choke on the marshmallows within several seconds, and pulled on Kerzman's pant leg. Kerzman executed the Heimlich Maneuver, forcing Chad to expel several pieces of marshmallow; Chad continued to choke. Kerzman held Chad upside down and alerted Laura; they drove Chad to the Kalispell hospital.

At the hospital, doctors suctioned a small liquified piece of marshmallow from Chad's airway. Chad sustained severe brain injuries as a result of the incident.

Laura Emery, on behalf of Chad Emery (Emery), filed the second amended complaint against Federated Foods on May 31, 1990. The complaint alleged that the marshmallows were defective and dangerous to the consumer and that, in spite of the significant danger of aspiration by small children, the product contained no warning of such danger. Emery also asserted a breach of warranty claim against Federated Foods. The complaint further alleged that Dr. Mark Sorenson negligently treated Chad Emery at the Kalispell hospital. Claims against two Missoula doctors who treated Emery after he was transferred to Missoula subsequently were settled and

3

dismissed.

Upon motion of Federated Foods, the District Court granted summary judgment for Federated Foods on the products liability and implied warranty claims. After these claims were dismissed, the District Court granted Dr. Sorenson's motion to change venue to Flathead County. The District Court certified the summary judgment order as final pursuant to Rule 54(b), M.R.Civ.P. Emery appeals the orders granting summary judgment and changing venue.

We note initially that, notwithstanding Emery's counsel's statement during oral argument that he also had appealed the dismissal of his breach of warranty claim, Emery did not argue or brief this question. As such, Emery cannot contest the District Court's grant of summary judgment against him on the breach of warranty claim. Nutter v. Permian Corp. (1986), 224 Mont. 72, 75, 727 P.2d 1338, 1340.


Did the District Court err in changing venue to Flathead County on Emery's negligence claim against Dr. Sorenson?

Emery filed his complaint in Missoula County. In Dr. Sorenson's first appearance in the action, he moved for a change of venue to Flathead County; the District Court denied the motion. After the dismissal of the other defendants, Dr. Sorenson renewed his motion to change venue. The District Court granted the motion, concluding that because Dr. Sorenson was the only remaining defendant, venue was proper in the county of his residence. Our review of such legal conclusions is plenary. See Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 475, 803 P.2d 601, 603.

4

It is well-settled in Montana that venue will be determined by the status of the parties and pleadings at the time of the complaint or at the time the moving party appears in the action. Boucher v. Steffes (1972), 160 Mont. 482, 485, 503 P.2d 659, 660; Clark Fork Paving, Inc. v. Atlas Concrete & Paving (1978), 178 Mont. 8, 13, 582 P.2d 779, 782; Petersen v. Tucker (1987), 228 Mont. 393, 395, 742 P.2d 483, 484.

In Boucher, the plaintiff filed a complaint against defendant Steffes and the administratrix of defendant Byer's estate in Fallon County, where the administratrix resided. Defendant Steffes moved for a change of venue to Yellowstone County, the county of his residence, after the claim against the administratrix was dismissed. Boucher, 503 P.2d at 660. In Boucher, we held that when there are multiple defendants when the case is instituted, and the defendants who reside in the county where the action was filed are dismissed, the remaining defendant has no right to change venue to his or her county of residence. Boucher, 503 P.2d at 660. We concluded that the status of the parties and pleadings at the time the moving party appears in the action determines venue. Boucher, 503 P.2d at 660.

Applying these principles to the case before us, venue was clearly proper in Missoula County when Dr. Sorenson originally appeared in the action, as the complaint alleged claims against out-of-state corporations and two Missoula doctors. See §§ 25-2-117 and -118, MCA. We conclude, therefore, that the District Court erred in changing venue to Flathead County. To hold otherwise

5

would require courts to reexamine the question of venue whenever the composition of the parties was altered; such a result would generate needless litigation and unduly burden the judiciary.

Finally, Dr. Sorenson asserts that because the District Court's order on Rule 54(b), M.R.Civ.P., does not mention the order changing venue, this Court lacks jurisdiction to determine whether venue was properly transferred. This argument is without merit. Rule 1(b)(2), M.R.App.P., provides for the direct appeal of an order changing or refusing to change venue when the basis for the motion is that the county designated in the complaint is not the proper county. As such, no Rule 54(b), M.R.Civ.P., certification is required.

Did the District Court err in refusing to consider the affidavits of Dr. Loube and Dr. Dingus?

In response to Federated Foods' motion for summary judgment, Emery submitted the affidavits of Dr. Julian M. Loube, a pediatrician, and Dr. Thomas A. Dingus, an industrial engineer. Although this Court was not provided with a transcript of the summary judgment hearing, apparently Federated Foods' only objection to the affidavits was that the subject matter of the lawsuit was not beyond the common understanding of a layperson and, therefore, expert testimony was not required.

In its order granting summary judgment for Federated Foods, the District Court stated:

> [t]he Court is not convinced that either Dr. Loube or Dr. Dingus are experts on the allegedly latent design defect or hidden dangers of marshmallows. Furthermore, the

6

affidavits do not offer any evidence upon which this Court can properly base a finding or inference that marshmallows possess any innocuous characteristics, either by design or composition, which would enhance the possibility of choking during consumption.

Emery contends that the District Court improperly refused to consider the affidavits of Dr. Loube and Dr. Dingus.

It is apparent from the District Court's opinion that the affidavits were before the District Court and it did consider their content. Moreover, in the District Court's May 24, 1993, order on remand from this Court, it stated that the affidavits were "relied on by the Court in reaching its decision . . . and constituted [a part of] the record." Therefore, although the District Court concluded that the affidavits did not lend any support to Emery's argument, it did not reject the affidavits on the basis argued by Federated Foods or otherwise; nor did it exclude them from consideration. The court having considered the affidavits, we conclude only that the District Court did not err by refusing to consider them; we leave for later determination by that court the question of the admissibility of testimony by Dr. Loube and Dr. Dingus under the Montana Rules of Evidence. The propriety of the court's conclusion regarding the content of the affidavits is analyzed in the following issue.


Did the District Court err in granting summary judgment for Federated Foods on Emery's products liability claim?

In support of its motion for summary judgment, Federated Foods filed a brief and relied on the existing record. In opposition to summary judgment, Emery submitted four affidavits: Dr. Loube, Dr.

7

Dingus, attorney Sharon Morrison, and Laura Emery. He also filed the sworn statement of Zach Emery, four exhibits and an accompanying brief.

In granting Federated Foods' motion for summary judgment, the District Court found that "the manner in which Chad consumed the marshmallows caused his damages," and concluded that no genuine issues of material fact existed. The District Court stated:

> [I]t is the manufacturer's duty to warn inadequately informed users about the risk of danger involved with the use of a product. . . The evidence in the record clearly supports a finding that the manner in which Chad consumed the marshmallows caused his damages. Under these circumstances, and for the reasons stated, the Court finds that the Defendants were not under any duty as a matter of law to warn the Plaintiffs that infants and toddlers can choke on large quantities of marshmallows eaten all at one time.

Relying on comment (j) of § 402A of the Restatement (Second) of Torts, the court concluded that a seller is not required to warn with respect to products which are only dangerous when consumed in excessive quantities if that danger is generally known and recognized.

Our standard in reviewing a grant of summary judgment is the same as that initially used by the district court. McCracken v. City of Chinook (1990), 242 Mont. 21, 24, 788 P.2d 892, 894. Summary judgment is appropriate when the pleadings, depositions, affidavits and other documents on file demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. The party seeking summary judgment has the burden of demonstrating a complete absence of any genuine factual issues. Mayer Bros. v. Daniel

8

Richard Jewelers (1986), 223 Mont. 397, 399, 726 P.2d 815, 816. The burden then shifts to the non-moving party to show the existence of a genuine issue of material fact in order to withstand the summary judgment motion. Mayer Bros., 726 P.2d at 816.

We have stated on numerous occasions that the purpose of summary judgment is to encourage judicial economy through the elimination of any unnecessary trial. However, summary judgment is never to be a substitute for trial if there is an issue of material fact. Payne Realty v. First Sec. Bank (1992), 256 Mont. 19, 24, 844 P.2d 90, 93. All reasonable inferences that may be drawn from the offered proof must be resolved in favor of the party opposing summary judgment. If there is any doubt regarding the propriety of the summary judgment motion, it should be denied. Payne Realty, 844 P.2d at 93.

After careful review of the record in this case, we conclude that the District Court erroneously resolved disputed issues of material fact and, therefore, exceeded the scope of its role at the summary judgment stage of this case. Although Federated Foods argues that the affidavits submitted do not create genuine issues of material fact because the statements therein relate to non-essential, non-material facts, we conclude that the documents were sufficient to meet Emery's burden in opposing summary judgment. We will briefly review the applicable law in this area to illustrate the materiality and relevance of the proof offered by Emery.

A products liability claim for failure to warn requires proof of the following elements:

9

1) the product was in a defective condition, "unreasonably" dangerous to the user or consumer;

2) the defect caused the accident and injuries complained of; and

3) the defect is traceable to the defendant.

Riley v. Honda Motor Co. (Mont. 1993), 856 P.2d 196, 198, 50 St.Rep. 714, 715; Brown v. North American Mfg. (1978), 176 Mont. 98, 105-6, 576 P.2d 711, 717. In reviewing the District Court's order in this case, we must consider the first two elements.

With respect to the first element, the failure to warn of an injury-causing risk associated with the use of a technically pure and fit product can render the product unreasonably dangerous. Riley, 856 P.2d at 198. The product is automatically defective if it is unreasonably dangerous and a warning is required but not given. Krueger v. General Motors Corp. (1989), 240 Mont. 266, 278, 783 P.2d 1340, 1348; Rost v. CF&I Steel Corp. (1980), 189 Mont. 485, 488, 616 P.2d 383, 385. A product may be defective if purchasers and likely users have been misinformed or inadequately informed about either the risks or the dangers involved in the use of the product or how to avoid or minimize the harmful consequences from such risk. Streich v. Hilton-Davis (1984), 214 Mont. 44, 54, 692 P.2d 440, 445-46.

Emery presented evidence to the District Court in support of his theory that the marshmallows involved in this case were defective and unreasonably dangerous because they lacked an effective warning. Dr. Loube's affidavit related to the potentially hazardous properties of a marshmallow and included the

10

following statements:

> Food items are often particularly dangerous in that they change their characteristics and consistency when they are soaked with the liquid secretions that are present in the breathing tubes of the lungs. These secretions usually cause some swelling of the food so that it further obstructs the breathing passage.
>
> . . .
>
> A marshmallow is a particularly hazardous confection as a risk of aspiration in children under the age of three. It is sweet and, therefore, has a great deal of appeal to small children. It appears soft and innocuous to parents and does not present the same apparent risk that might be perceived by a parent when considering a piece of hard candy or a jelly bean.
>
> . . .
>
> An aspirated piece of marshmallow can be very difficult to dislodge. Because it continues to expand after entering the airway it can efficiently obstruct a large breathing passage, perhaps even the trachea (the main breathing tube). An aspirated marshmallow fragment might not be reachable with a finger and could be difficult to dislodge with a Heimlich maneuver.

Further, Dr. Dingus stated that, absent an appropriate warning, it is foreseeable that a reasonable parent would not perceive that marshmallows present a danger to small children.

In spite of this evidence, the District Court stated that "the evidence does not support a finding that marshmallows pose any more of a threat of choking upon consumption than do the majority of other foods." The court also concluded that the affidavits did not offer any evidence upon which the court could base a finding or inference that marshmallows possess any innocuous characteristics, either by design or composition, which would enhance the possibility of choking during consumption.

We emphasize that summary judgment was not intended, nor can

11

it be used, as a substitute for trial of issues of fact. Edgewater Townhouse Assoc. v. Holtman (1992), 256 Mont. 182, 185, 845 P.2d 1224, 1226. The question before the District Court was whether genuine issues of material fact existed regarding the potential danger of aspiration of marshmallows without an appropriate warning. We conclude that the District Court erroneously resolved issues of fact regarding the chemical properties of marshmallows and the foreseeability of the danger of aspiration in children.

Regarding the element of causation, we recently stated in Riley that while causation is ordinarily a question of fact in a failure to warn claim, it may be determined as a matter of law where reasonable minds can reach but one conclusion. Riley, 856 P.2d at 198. We also explained that this element can be satisfied by evidence indicating that a warning would have altered the plaintiff's use of the product or prompted the plaintiff to take precautions to avoid the injury. Riley, 856 P.2d at 198-99.

In Laura Emery's affidavit, she stated that "if I had been warned of the risk of small children choking on marshmallows, I would not have purchased them at all . . . I usually read labels on food products prior to buying them. I always take note of warnings on labels about risks to children." At a minimum, pursuant to Riley, this evidence raises a genuine issue of material fact regarding causation.

Nonetheless, the District Court made a factual finding that "Chad's overindulgence caused his injuries" and concluded that "the evidence in the record clearly supports a finding that the manner

12

in which Chad consumed the marshmallows caused his damages." We conclude that a genuine issue of material fact exists regarding the cause of Chad's damages. This question of causation--that is, whether the incident was caused by the manner and quantity of marshmallows eaten or by a product defective and unreasonably dangerous by virtue of the absence or inadequacy of a warning-- remains to be decided by the fact-finder.

As a final matter, the District Court went on to state that:

> [n]o evidence even suggests that Laura Emery was an inadequately informed user of marshmallows. Likewise, the record is devoid of substantial credible evidence which would support a finding that Ms. Emery was not cognizant of the potential harm presented by the consumption of marshmallows.

Laura Emery's affidavit stated that it did not occur to her that marshmallows presented a risk of choking in small children. Dr. Dingus' affidavit also stated that it is foreseeable that a reasonable parent, would not, without the presence of an appropriate warning, perceive that marshmallows present a danger to small children. Again, the affidavits presented belie the District Court's opinion and its conclusion that no disputed issues of material fact exist here.

In sum, we conclude that the affidavits submitted by Emery in opposition to Federated Foods' motion for summary judgment adequately discharged his burden of demonstrating genuine issues of material fact. We do not suggest that the disputed facts discussed herein are the only disputed facts that remain to be determined in this case; rather, those facts are indicative of the presence of disputed issues of fact and the error in granting summary judgment.

13

We hold that the District Court erred in granting summary judgment for Federated Foods on Emery's failure to warn claim.


Did the District Court err in declining to rule on the admissibility of a report compiled by the American Academy of Pediatrics?

At the summary judgment hearing, Emery's counsel attempted to introduce into evidence a report to the Food and Drug Administration by the American Academy of Pediatrics entitled "Foods and Choking in Children." Federated Foods' counsel objected to the report as hearsay. Emery contends that the study was offered pursuant to the hearsay exception for public records and reports under Rule 803(8), M.R.Evid., arguing that the report contains factual findings resulting from an investigation made pursuant to authority granted by law. Both sides briefed the question following the summary judgment hearing. The District Court did not rule on the admissibility of the report and does not mention it in its opinion and order on summary judgment.

We conclude that resolution of this issue is unnecessary and premature at this time. This Court was not provided with a transcript of the summary judgment hearing and the record before us does not reflect whether the District Court admitted or rejected the report. Furthermore, the thrust of the report's conclusions is duplicated in Dr. Loube's affidavit. Because we have determined that summary judgment was inappropriately granted based on the affidavits offered by Emery, the contents of the report are not necessary for our resolution of the summary judgment issue. In the

14

event the report is offered into evidence at trial, the District Court will address the question of admissibility pursuant to the Montana Rules of Evidence.

Reversed and remanded for further proceedings consistent with this opinion.

_____
                    Justice

We concur:

_____
        Chief Justice


_____

_____

_____

_____
                    Justices

Chief Justice J. A. Turnage, dissenting:

I respectfully dissent.

Two-and-one-half-year-old Chad Emery choked on a marshmallow and sustained a permanent injury. Everyone is distressed at this unfortunate incident. However, the issue facing this Court is whether such incident is the basis for a products liability claim for failure of the respondents to warn Chad Emery's mother of the danger of allowing her son to eat a marshmallow.

The majority opinion, in citing this Court's prior case law in Brown v. North American Mfg. (1978), 176 Mont. 98, 105, 576 P.2d 711, 716, and Riley v. American Honda Motor Co., Inc. (Mont. 1993), 856 P.2d 196, 198, 50 St.Rep. 714, 715, correctly states the established rule:

> A products liability claim for failure to warn requires proof of the following elements:
>
> "1) <u>the product was in a defective condition, 'unreasonably' dangerous to the user or consumer</u>;
>
> "2) the <u>defect</u> caused the accident and injuries complained of[.]" [Emphasis supplied.]

The majority opinion then further states:

> The question before the District Court was whether genuine issues of material fact existed regarding the potential danger of aspiration of marshmallows without an appropriate warning. We conclude that the District Court erroneously resolved issues of fact regarding the chemical properties of marshmallows and the foreseeability of the danger of aspiration in children.

In the real world of life as it is, the marshmallows in this case were not a product in a defective condition and thereby unreasonably dangerous to the user or consumer. If marshmallows

16

are unreasonably dangerous to eat without a warning, then so would be nearly every conceivable food item that a two-and-one-half-year-old child would try to eat; and I submit that children of that age will try to eat anything and everything.

The possibility of a small child choking on nearly all food items is, or should be, a matter of common knowledge to all adults.

The net result of the majority opinion may well be that warnings must be placed on nearly every food item available to the public if the provider is to avoid litigation for a claim of products liability--an interesting challenge for the providers of edible items.

I understand the majority concern about the limits on summary judgments and district judges granting summary judgments when genuine issues of fact exist.

In this case as a matter of law, however, the essential element of a products liability claim is missing--the marshmallow was not in a defective condition and unreasonably dangerous.

I would affirm.

_____
Chief Justice

Justice John C. Harrison:

I concur in the dissent of Chief Justice Turnage.

_____
Justice

November 18, 1993

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Frank B. Morrison, Jr.
Morrison Law Offices, P.S.C.
745 S. Main
Kalispell, MT  59901

Leonard Kaufman
Murray, Kaufman, Vidal, Gordon & Ogle
P.O. Box 728
Kalispell, MT  59901

Sherman V. Lohn
Garlington, Lohn & Robinson
P.O. Box 7909
Missoula, MT  59807-7909

Ms. Kathleen "K.D." Breuer
Clerk of District Court
Missoula County Courthouse
200 W. Broadway
Missoula, MT  59802

HON. JOHN S. HENSON
4th Judicial District
Missoula County Courthouse, Dept. #2
200 W. Broadway
Helena, MT  59802

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy