No. 94-372

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995


STATE OF MONTANA,

    Plaintiff and Respondent,

    v.

STEVE COONEY,

    Defendant and Appellant.

FILED

APR 2 5 1995

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:    District Court of the Third Judicial District,
                In and for the County of Powell,
                The Honorable Ted L. Mizner, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

                Terry G. Sehestedt, Attorney at Law,
                Missoula, Montana

        For Respondent:

                Hon. Joseph P. Mazurek, Attorney General,
                Elizabeth L. Griffing, Assistant Attorney
                General, Helena, Montana

                Christopher G. Miller, Powell County Attorney,
                Deer Lodge, Montana


                        Submitted on Briefs:  January 26, 1995

                                Decided: April 25, 1995

Filed:


_____
                Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

On July 14, 1993, defendant Steve Cooney was charged by complaint filed in the Justice Court for Cottonwood Township in Powell County with misdemeanor stalking in violation of § 45-5-220, MCA. After trial, he was found guilty of the crime with which he was charged. He appealed his conviction to the District Court for the Third Judicial District in Powell County and waived his right to a jury trial. On June 16, 1994, the District Court also found Cooney guilty as charged. Cooney appeals the judgment of the District Court.

We restate the issues on appeal as follows:

1.   Was Powell County a proper venue for the stalking charges filed against Cooney?

2.   Did the District Court unconstitutionally relieve the State of its burden of proof based on an impermissible presumption?

3.   Is Cooney's conviction supported by sufficient evidence?

4.   Does the stalking statute, as applied to Cooney in this case, violate his constitutional right to free speech?

<u>FACTUAL BACKGROUND</u>

In 1989, Cooney met Linnea Busby after he became her landlord in Missoula, Montana. At that time, Linnea was a college student, but lived in Helmville with her parents when not attending school. She still lists Helmville as her regular address.

Shortly after they met, Cooney asked Linnea for a date. However, she declined. In June 1991, Linnea returned to Helmville,

2

where Cooney sent her flowers and letters, and repeatedly phoned in an attempt to reach her. Linnea returned to Missoula in early 1992, but left in June 1992 and moved to Colorado where she continued to attend school at the time of trial.

Linnea's mother, Joyce, testified that she received as many as 50 letters from Cooney which were addressed to her daughter at their Helmville address. She also testified that sometimes she received as many as six letters in one day, and that she received approximately 35 letters from April 1993 until July of that year when charges were filed. During June 1993, Cooney sent a diamond ring to Linnea at her Helmville address.

In the letters, Cooney expressed his love for Linnea with unusual forms of expression, such as "I wuv U, I wuv U." He often referred to himself as Boris and Linnea as Natasha. Cooney also expressed his desire to marry her and stated that he would be coming to Colorado.

Cooney made numerous telephone calls to Linnea in Colorado and to her Helmville residence. From June 5 through June 17, 1993, he left several messages on her answering machine in Colorado. On those answering machine tapes, Cooney related his desire to marry her, and stated "I wuv you, wuv you, wuv you . . ." He added that he would be going to Helmville. In another message, he urged Linnea to return his telephone call because it was about her deposit. On the recorded messages, Cooney variously spoke in a happy tone, hushed tone, angry tone, or whispers.

On June 22, 1993, Cooney left the following message on the answering machine at Linnea's residence in Helmville: "Say, I got a big hard on and wondered if you'd like to bite on it. You know who this is." The same day Cooney left several messages on her answering machine in Colorado:

Hi Linnea. I'd like to get some sex. You know what I mean. Give me a call.

Linnea, I was kinda wondering. How would you like to have some great sex.

Yeah Linnea. You've really upset me. I don't know if I ever want to see you again or if I ever want to speak to you again. Not until you apologize. Bye.

The last message was expressed in an angry tone of voice.

At trial, Linnea testified about how she felt as a result of Cooney's actions. She stated that she was always looking around because she knew he was trying to find her. She changed her telephone number and screened calls through her answering machine. Linnea stated that she was nervous, and if she could help it, never went anywhere alone for fear that he might find her. She also testified that she was apprehensive that Cooney might physically injure her because Cooney gets mad when she does not respond.

Cooney was convicted of stalking in Justice Court. He appealed his conviction to the District Court, where he received a trial *de novo*. Before trial in the District Court, Cooney moved to dismiss the charge on the basis that venue was improper in Powell County. The court reserved ruling on his motion until after trial. Following a nonjury trial, the District Court denied Cooney's

4

motion. The court held that there were sufficient contacts with Powell County to sustain venue in Powell County, and found Cooney guilty of stalking, in violation of § 45-5-220, MCA. Judgment was entered on June 16, 1994. The following day, the court sentenced Cooney to one year in the Powell County Jail with all but 30 days suspended, based on certain conditions.

## ISSUE 1

Was Powell County a proper venue for the stalking charges filed against Cooney?

A district court's determination of venue is a legal conclusion and our standard of review is plenary. *Emery v. Federated Foods*, Inc. (1993), 262 Mont. 83, 87, 863 P.2d 426, 429.

Montana enacted § 45-5-220, MCA, on April 9, 1993. It provides, in relevant part:

(1) A person commits the offense of stalking if the person purposely or knowingly causes another person substantialemotionaldistress or reasonable apprehension of bodily injury or death by repeatedly:
. . .
(b) harassing, threatening, or intimidating the stalked person, in person or by phone, by mail, or by other action, device, or method.

Cooney argues that neither the alleged conduct nor the necessary result occurred in Powell County. He claims that the alleged conduct occurred in Missoula and the result, if any, occurred in Colorado where Linnea was living. Therefore, he contends that there was no basis for venue in Powell County.

5

The State responds that when several acts form the basis for a single offense, a defendant can be charged in any county in which any of the acts have occurred. The State's position, which we conclude is correct, is based on § 46-3-112(2), MCA, which provides:

> When an act requisite to the commission of an offense occurs or continues in more than one county, the charge may be filed in any county in which the act occurred or continued.

The State introduced numerous letters sent to Linnea at her Helmville residence to prove the acts necessary to establish stalking. Likewise, the State introduced an offensive telephone message that Cooney left on an answering machine at Linnea's Helmville address.

Thus, the result of many acts which formed the bases of the charge against Cooney occurred in Powell County. Based on prior authority of this Court, *State v. Cassill* (1924), 70 Mont. 433, 227 P. 49, and the plain language of § 46-3-112, MCA, that is all that was required.

Commission Comments to § 46-3-112, MCA, also support our conclusion:

> This provision allows the trial to take place in the most convenient county where an element of the offense occurred. It does not matter if the final consummation of the offense occurred in another county. The only elements of the crime which are of interest are those acts constituting or requisite to the consummation of the offense; the trial of the case may be held in any county in which such acts occur.

We conclude that the District Court did not err when it determined venue was proper in Powell County.

ISSUE 2

Did the District Court unconstitutionally relieve the State of its burden of proof based on an impermissible presumption?

Cooney argues that § 45-5-220(6), MCA, improperly relieved the State of its burden to prove an element of the crime, and denied him his right to due process. Section 45-5-220(6), MCA, provides as follows:

> Attempts by the accused person to contact or follow the stalked person after the accused person has been given actual notice that the stalked person does not want to be contacted or followed constitutes prima facie evidence that the accused person purposely or knowingly followed, harassed, threatened, or intimidated the stalked person.

However, nothing in the record indicates that the District Court based its decision on this statute. Nor did Cooney challenge or object to the applicability or constitutionality of the statute at trial. Section 46-20-104(2), MCA, provides:

> Upon appeal from a judgment, the court may review the verdict or decision and any alleged error objected to which involves the merits or necessarily affects the judgment. Failure to make a timely objection during trial constitutes a waiver of the objection except as provided in 46-20-701(2).

The exceptions to § 46-20-104(2), MCA, found in § 46-20-701(2), MCA, do not apply. Therefore, because Cooney failed to object at trial, and for the further reason that the statute complained of does not appear to have formed any basis for the District Court's decision, it would be inappropriate to consider the merits of this

7

argument on appeal.  We hold that Cooney was not denied his constitutional right to due process.

## ISSUE 3

Is Cooney's conviction supported by sufficient evidence?

Our standard of review for sufficiency of the evidence is:

> [W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*State v. Arlington* (1994) , 265 Mont. 127, 146, 875 P.2d 307, 318 (quoting *State v. Cyr* (1987), 229 Mont. 337, 339, 746 P.2d 120, 122).  Cooney argues that the evidence does not support the District Court's decision.  He claims that while his repeated expressions of affection may have been in poor taste, there was no evidence that he caused anyone "substantial emotional distress or reasonable apprehension of bodily injury."

We conclude, however, based on our review of the testimony, that sufficient proof of such an effect was offered.

At trial, the prosecutor asked Linnea if she was apprehensive of physical injury or harm from Cooney.  She responded, "Yea, I'm afraid it could get to that."  She was then asked why she felt that way and responded,  "Because he seems to get mad when I don't respond. . . . I have told him for so long to leave me alone, and then like the message where he's mad. . . .  I think that he has that tendency if he can get mad without me doing anything."  Linnea's mother also testified that she talked to her 'daughter

8

every day on the telephone to determine if she was alright and stated that Linnea had expressed fear to her

Linnea testified she was always afraid Cooney would find her, and evidence established that Cooney repeatedly stated that he would be going to Helmville or Colorado. She changed her telephone number and screened her calls. She was afraid to go places by herself and was always looking to see if Cooney was near. She testified that she feared what Cooney might do if he found her, and stated that she feels terrible and nervous.

The court found that Cooney's persistence, despite rejection, caused Linnea substantial emotional distress. We conclude that that finding, and the District Court's judgment, is supported by substantial evidence.

### ISSUE 4

Does the stalking statute, as applied to Cooney in this case, violate his constitutional right to free speech?

Cooney contends that the stalking statute, as applied to him in this case, deprives him of freedom of speech, in violation of the United States and Montana Constitutions.

He contends that he did not threaten Linnea, but only expressed his love for her, and therefore, that his expressions were protected speech.

We have previously held that threats are not protected speech under the First Amendment. *State v. Lance* (1986), 222 Mont. 92, 103, **721** P.2d 1258, 1266. The State's contention, with which we agree,

9

is that Cooney's actions which caused substantial emotional distress are, likewise, not protected by the First Amendment.

The First Amendment does not protect all speech. In *Lance, we* quoted *Chaplinsky v. New Hampshire* (1942), 315 U.S. 568, 571-72, 62 S. Ct. 766, 768-69, 86 L. Ed. 1031, 1035, which contains language applicable to this case.

> There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problems. These include the lewd and obscene, the profane, the libelous, and the insulting or "fighting" words--those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value . .

*Lance*, 721 P.2d at 1265. The District Court concluded, based on substantial evidence, that Cooney's calls and letters caused his victim substantial emotional distress, and that " [t]he harassment and resultant emotional distress are substantial and beyond that which anyone must tolerate."

Cooney's conduct inflicted injury on his victim and lacked any social value. We agree with the State's assertion that free speech does not include the right to cause substantial emotional distress by harassment or intimidation. The language quoted from *Chaplinsky* indicates that actual threats are not the only category of spoken words that do not receive First Amendment protection

10

We conclude that § 45-5-220, MCA, was not unconstitutionally applied in violation of the United States or Montana Constitutions. We affirm the judgment of the District Court.

_____
Justice

We concur:

_____

_____

_____
Justices

11

Justice W. William Leaphart, dissenting.


As much as the evidence supports the conviction of Cooney for his puerile but, nonetheless, threatening behavior, the law requires the State, in addition to proving the elements of stalking, to prove proper venue. I dissent from the majority's determination that Powell County was a proper venue for the stalking charges filed against Cooney. Because neither Cooney's criminal acts nor the effects of these criminal acts occurred in Powell County, I conclude that Powell County was not a proper venue for the charges against Cooney.

Section 46-3-110, MCA, establishes that in all criminal prosecutions, the charge must be filed in the county where the offense occurred unless the law provides otherwise. Section 46-3-111, MCA, establishes that trial generally must be held in the county where the charge is filed. This Court has held that "[a]lthough venue is not an element of the crime, it is a jurisdictional fact that must be proven at trial just as any other material element." State v. Johnson (1993), 257 Mont. 157, 161, 848 P.2d 496, 498 (citation omitted). I note that this statement is contrary to the commission comments to § 46-3-111, MCA, which state that venue need only be proved by a preponderance of the evidence rather than beyond a reasonable doubt. However, I believe that in this case, the State failed to demonstrate by a preponderance of the evidence that Powell County was a proper venue.

12

Cooney was charged with stalking Ms. Busby between April 16, 1993 and June 13, 1993. The record indicates that Cooney sent several letters to Ms. Busby at her parent's home in Helmville, Montana, which is in Powell County. Cooney also left several messages on Ms. Busby's parent's answering machine in Helmville. However, there is no testimony or other indication from the record that Ms. Busby received any of these letters or phone messages in Helmville between April 16, 1993 and June 13, 1993. The majority states that Ms. Busby returned to Helmville in June of 1991 where she received letters, flowers and phone calls from Cooney. I do not believe that the record clearly reflects this fact. However, even if true, June of 1991 is not the relevant time period charged in the complaint. There is nothing in the record to indicate that Ms. Busby was in Helmville during the April through June 1993 time period for which Cooney was convicted of stalking.

The majority states that the plain language of § 46-3-112(2), MCA, supports the conclusion that venue was proper in Powell County. Section 46-3-112(2), MCA, reads:

> When an act requisite to the commission of an offense occurs or continues in more than one county, the charge may be filed in any county in which the act occurred or continued.

I would agree with the majority's analysis if Ms. Busby had received the letters or phone messages in Powell County. Based on the record before us, that is not the case. The majority goes on to state that "the result of many acts which formed the bases of the charge against Cooney occurred in Powell County." (Emphasis added.) Cooney was charged as follows:

13

That on or about April 16, 1993 to July 13, 1993 at Powell County Montana, [Cooney] committed the offense of Stalking as specified in Chapter 292, Laws of Montana 1993 [now § 45-5-220, MCA].

The facts constituting the offense and the facts giving probable cause to believe the Defendant committed it are:

That the defendant purposely or knowingly caused Linnea Busby substantial emotional distress by repeatedly harassing, threatening or intimidating Linnea Busby in person, by phone, and by mail.

The only result of Cooney's acts which is material for the purpose of establishing an element of the charge against him is Ms. Busby's resulting substantial emotional distress. The record does not establish that Ms. Busby was in Powell County when she received any of the letters or messages or that she experienced resulting substantial emotional distress in Powell County.

The majority also states that State v. Cassill (1924), 70 Mont. 433, 227 P. 49, supports its conclusion that venue was proper in Powell County. However, Cassill is clearly distinguishable. In Cassill, the defendants, two bankers, were charged with having made false statements to the superintendent of banks. The defendants falsely filled out a form in Powell County and mailed it to the superintendent in Lewis and Clark County. This Court held that the defendants could be properly tried in Powell County as the acts constituting the consummation of the offense occurred in two counties, either of which was a proper venue. Cassill, 227 P. at 51. Here, the State failed to establish either that Cooney sent the letters and messages from Powell County, or that Ms. Busby received them in Powell County. There is no evidence that the acts constituting the offense were consummated in Powell County.

14

The charges against Cooney should have been dismissed for failure to prove that Powell County was a proper venue. For the foregoing reasons, I dissent.


_____
Justice