NO.   94-301

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

TOPCO, INC., a Montana
Corporation,

    Plaintiff/Appellant,

    v.

STATE OF MONTANA,
DEPARTMENT OF HIGHWAYS,

    Defendant/Respondent
    and Cross-Appellant.

**FILED**

MAR 1 1 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the First Judicial District,
    In and for the County of Lewis and Clark,
    The Honorable Jeffrey Sherlock, Judge presiding


COUNSEL OF RECORD:

    For Appellant:

        Richard A. Reep, Reep, Spoon & Gordon, Missoula,
        Montana; Dennis E. Lind, Datsopoulos, MacDonald &
        Lind, Missoula, Montana

    For Respondent:

        Nick A. Rotering, Stephen F. Garrison, Montana
        Department of Transportation, Helena, Montana


Submitted on Briefs:  October 12, 1995

Decided:  March 11, 1996

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Topco, Inc. (Topco) appeals from the Findings of Fact, Conclusions of Law and Order of the First Judicial District Court, Lewis and Clark County, awarding certain damages to Topco under a clearing and grubbing contract with the State of Montana, Department of Highways (State). The State cross-appeals on the assignment of the contract to Topco. We affirm in part, reverse in part and remand.

We address the following issues on appeal:

1. Whether the District Court erred in failing to find that the assignment to Topco from Washington Construction violated the terms of the contract.

2. Whether the District Court erred in awarding damages to Topco at the subcontract price rather than at the contract price.

3. Whether the District Court erred in determining that acreage measurement should use horizontal rather than slope distances.

4. Whether the District Court erred in failing to award Topco consequential damages as a result of the State's breach of contract.

5. Whether the District Court erred in failing to award Topco payment for acres cleared but not paid for by the State.

6. Whether the District Court erred in changing venue from Missoula County to Lewis and Clark County.

Background Facts

On October 7, 1988, the State awarded a highway construction contract to Washington Construction co. (Washington) for reconstruction of 16 miles of highway between Libby and Troy, Montana. The project involved realignment of the existing roadway through a canyon and bordering a river. The State prepared plans

2

and cross-section drawings that showed the actual profile of the construction site.

Under the contract, clearing and grubbing, the process of clearing trees, tree stumps and brush from the construction site, was to extend 10 feet beyond the construction limits. The plans and specifications prepared by the State did not indicate any exclusion for the 50 acres of old highway or paved travel way (PTW) from the clearing and grubbing area.

John Richards (Richards), the sole shareholder of Topco, inspected the construction site prior to submitting a bid to Washington for the clearing and grubbing. Only a few of the stakes showing the clearing limits were in place at the time Richards inspected the site. Richards submitted Topco's bid to Washington taking into account that some areas of the construction site would require little or no clearing and grubbing and other areas would require substantial clearing and grubbing.

On November 1, 1988, Topco entered into a subcontract with Washington for clearing and grubbing of 183.7 acres at $1725 per acre. Washington had been awarded the prime contract with a clearing and grubbing price of $3600 per acre. The 1987 edition of the Standard Specifications for Road and Bridge Construction (Standard Specifications) was made a part of Washington's contract with the State.

Topco commenced clearing and grubbing in November 1988. A short time later, a dispute arose between Topco and the State with respect to the measurements for payment of the clearing and grubbing. The contract between Washington and the State required

3

that all claims of subcontractors be made through Washington as the general contractor. On June 27, 1989, Topco, through Washington, asserted a claim against the State regarding inclusion of the PTW and the method of measurement of the acreage cleared and grubbed. The State denied Topco's claim.

On February 6, 1990, Topco made a formal claim for payment of additional acreage, including the PTW. This claim was denied by the District Engineer in March 1990. Topco then appealed to the Board of Contract Appeals. On July 23, 1990, the Board affirmed the District Engineer's decision without comment. On August 1, 1990, the State affirmed that all administrative remedies had been exhausted by Washington and Topco.

Washington assigned all right, title and interest in and to the clearing and grubbing portion of the contract to Topco on October 24, 1990, so that Topco could pursue the contract claims directly. On November 14, 1990, Topco filed a complaint against the State in Missoula County. On the State's motion, venue was changed to Lewis and Clark County in October 1991.

A bench trial was held in November 1993. The District Court issued its Findings of Fact, Conclusions of Law and Order on March 17, 1994, wherein the court ordered the State to pay Topco for the 50 acres of PTW at $1750 per acre (even though the subcontract specified $1725 per acre). Topco appeals the District Court's decision in several respects and the State cross-appeals on the assignment of the contract to Topco.

## Standard of Review

We review a district court's findings of fact to determine

4

whether they are clearly erroneous. Daines v. Knight (1995), 269 Mont. 320, 324, 888 P.2d 904, 906 (citing Columbia Grain International v. Cereck (1993), 258 Mont. 414, 417, 852 P.2d 676, 678). A finding is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if, after reviewing the record, this Court is left with a firm conviction that a mistake has been made. Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287.[1]

We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. Carbon County v. Union Reserve Coal Co., Inc. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686 (citing Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603-4).

### Issue 1.

Whether the District Court erred in failing to find that the assignment to Topco from Washington Construction violated the terms of the contract.

In its March 17, 1994, Findings of Fact, Conclusions of Law and Order, the District Court concluded that there was an assignment of Washington's contract to Topco. The State, in its cross-appeal, argues that this assignment is invalid because it violates the terms of the contract and the Standard Specifications

---

[1] In our recent opinion in Bauer v. State (Mont. 1996), ___ P.2d ___ 53 St.Rep. 65, we said that if a finding of fact is supported by substantial credible evidence the finding is not clearly erroneous. However, it was not our intention that this be interpreted as modifying the three-part test set forth in DeSaye. In Bauer, the test was simply satisfied at the first prong without proceeding further. The standard of review for a district court's findings of fact is still as stated in DeSaye.

which had been made a part of the contract. Contrary to the State's argument that any assignment of the contract required the written consent of the State, Topco argues that the Standard Specifications only require written consent if the portion of the contract transferred is more than 50 percent of the potential earnings under the contract.

Standard Specification § 108.01(A) states:

> The Contractor shall assign *not* more *than 50 percent of the potential earnings* or transfer, convey, or otherwise dispose of the right, title, or interest therein to any other person, firm, or corporation without the written consent of the surety and of the Department. [Emphasis added.]

At trial, the testimony of one of the State's own witnesses showed that the portion of the contract regarding clearing and grubbing consisted of only 5.42 percent of the potential earnings under the contract. Consequently, since written consent of the State was not required, the assignment to Topco did not violate the terms of the agreement.

Furthermore, Topco argues that the State waived its objection to the assignment because in the Pretrial Order, the State stipulated to the fact that Washington assigned its contract to Topco on October 24, 1990. We have previously stated that it is improper to raise an issue on appeal as to a question of law or fact after the parties have entered into a stipulation as to that law or fact. Penn v. Burlington Northern, Inc. (1980), 185 Mont. *223, 228, 605* P.2d 600, 603-4 (citing Oregon Automobile Insurance Company v. Watkins (1973), 264 Or. 464, 506 P.2d 179).

Accordingly, on either approach to this issue, we hold that

the District Court was correct in concluding that the assignment of the contract to Topco was valid.

### Issue 2.

> Whether the District Court erred in awarding damages to Topco at the subcontract price rather than the contract price.

Since we have already determined that Washington's assignment of the clearing and grubbing portion of the contract to Topco was valid, it follows that all of Washington's interest in the contract as to clearing and grubbing was assigned to Topco and is therefore recoverable by Topco. This Court has previously held that an assignee of a contract is subject to all of the terms of the contract between the account debtor and assignor, and any defense or claim arising therefrom. Massey-Ferguson Credit Corp. v. Brown (1977), 173 Mont. 253, 256, 567 P.2d 440, 442.

The contract price for clearing and grubbing was $3600 per acre. Once the District Court found that the contract had been assigned to Topco, it should have enforced the contract as written and should not have changed the terms by substituting the subcontract price for the contract price. Where contract provisions are unambiguous, the courts have no authority to insert provisions in, or delete provisions from, the contract. Westfork Const. Co. v. Nelcon, Inc. (1994), 265 Mont. 398, 404, 677 P.2d 481, 485.

The State argues that paying the contract price would result in a windfall to Topco because the $3600 per acre figure included Washington's overhead and mobilization costs which were not attributable to Topco as the subcontractor. However, it is not up

7

to the State to "protect" Washington's interests.  As provided for in the subcontract, Topco could have required Washington to pursue Topco's claims.  However, the parties agreed to an assignment of contract rights to Topco in exchange for Washington's release from liability.  In contrast to the State's argument, any windfall would go to the State if it were required to pay only $1750 per acre instead of its contractual obligation of $3600 per acre.

Accordingly, we hold that the District Court erred in awarding damages to Topco at the subcontract price rather than the contract price.  Topco is entitled to the contract price of $3600 per acre for the PTW acreage included by the District Court in its Order.

### Issue 3.

Whether the District Court erred in determining that acreage measurement should use horizontal rather than slope distances.

The central dispute in this case involves the method used to measure the acreage cleared and grubbed.  A measurement using slope distances follows the natural contour of the terrain whereas a horizontal measurement follows the plane of the earth. The acreage measured by these two methods can vary extensively when clearing and grubbing is required on steeply sloped ground as in the construction project involved in this dispute.

Topco argues that the State incorrectly employed horizontal measurements and as a result Topco was not properly paid for all the acres it had cleared and grubbed.  Section 109.01 of the Standard Specifications provides for the method of measurement to be used:

The method of measurement and computations to be

8

used in determination of quantities of material furnished and of work performed under the contract will be those methods generally recognized as conforming to good engineering practice.

Unless otherwise specified, longitudinal measurements for area computations will be made horizontally, and no deductions will be made for individual fixtures having an area of 9 square feet or less. Unless otherwise specified, *transverse* measurements for area computations *will be the neat dimensions shown of the plans or ordered in* writing *by the Engineer.* [Emphasis added.]

The transverse measurement is the measurement in question. Topco argues that while the word "transverse" does not denote slope, something different than horizontal was intended. Topco further argues that the phrase "neat dimensions" refers to a slope measurement and that if the State, which drafted the Standard Specifications, had intended horizontal measurements, it would have said horizontal measurements. Uncertain terms in a contract are to be construed against the party causing the uncertainty. Section 28-3-206, MCA; Mueske v. Piper, Jaffray & Hopwood, Inc. (1993), 260 Mont. 207, 216, 859 P.2d 444, 449-50.

In addition, § 201.03 of the Standard Specifications relating to payment per acre supports Topco's contention that the State intended to pay based upon the actual working area acceptably cleared and grubbed. Section 201.03 states:

(B) Area Basis. Measurement of clearing, grubbing, or clearing and grubbing on an area basis will be the number of acres and fractions thereof acceptably cleared, grubbed, or cleared and grubbed to the limits shown on the plans or staked by the Engineer.

As Topco points out, both clearing and grubbing and seeding and fertilizing use § 109.01 of the Standard Specifications for calculating area measurement. There was no differentiation in the

9

contract as to clearing and grubbing versus seeding and fertilizing and in actuality, the same terrain is covered in both operations. Testimony at trial showed that seeding and fertilizing was paid by actual acreage using slope measurements.

The District Court found that "every witness who testified in this case, except for Topco, indicated that the practice in Montana has been to pay for clearing and grubbing on a horizontal basis and not on a slope basis." Additionally, the court concluded that good engineering practice does not allow for payment of clearing and grubbing on the slope. However, the contract at issue provides:

> It is further understood and agreed that said construction and work shall be done in strict compliance with said standard specifications and further, it is expressly understood and agreed that no rules, **customs or usages**, *either local or otherwise, shall in any way be considered, implied,* or *inferred into this contract.* [Emphasis added.]

It was error to admit the testimony concerning custom and usage where the contract explicitly excluded its consideration and then to rely on that testimony in interpreting the contract to define the area on which Topco was to be paid for clearing and grubbing. Accordingly, we hold that the District Court erred in determining that acreage measurement should use horizontal rather than slope distances, and we remand for calculation of the amount due Topco based on slope measurement.

### Issue 4.

Whether the District Court erred in failing to award Topco consequential damages as a result of the State's breach of contract.

Topco contends that its damages, other than for payment for omitted acres, exceed $1 million. These damages include lost

10

profits, penalties and assessments by the Internal Revenue Service and the Montana Department of Revenue, as well as losses on properties that had to be sold for less than their fair market value. In its Findings of Fact, Conclusions of Law and Order, the District Court concluded that the various consequential damages requested by Topco were "too speculative to award."

The measure of damages for breach of contract is the amount which will compensate the aggrieved party for all detriment proximately caused by the breach. Daines v. Knight (1995), 269 Mont. 320, 329, 888 P.2d 904, 909. "In all cases, damages must be reasonable." Daines, 888 P.2d at 909.

Topco argues that the losses it sustained were the direct result of the State's failure to pay Topco in accordance with the contract. Conversely, the State argues that Topco failed to prove with sufficient certainty that any consequential damages arose from the State's failure to pay.

Damages for lost profits may be awarded if such loss is shown to be the "natural and direct result of the act of the defendant" and if the loss is not speculative. Olson v. Parchen (1991), 249 Mont. 342, 348, 816 P.2d 423, 427 (citing Hostetter v. Donlan (1986), 221 Mont. 380, 382, 719 P.2d 1243, 1245). The prohibition against speculative profits does not necessarily apply to uncertainty about the amount of such profits, but applies to uncertainty about "whether the loss of profits is the result of the wrong and whether such profit would have been derived at all." Olson, 816 P.2d at 427.

Contrary to Topco's argument that since the State failed to

11

present any evidence refuting Topco's damage claim, Topco is entitled to all damages it claims for the State's breach of contract, it was Topco's burden to prove damages. At trial, Richards conceded that the problems that developed between Topco, the IRS and the Montana Department of Revenue could be attributed to other construction projects that Topco was working on at the same time as the Troy-Libby project.

Topco contends that "uncertainty in the amount of damages is excusable and is not a bar to recovery." However, the uncertainty here is not in the amount of the damages, but whether the damages claimed were caused by the breach.

We will not substitute our judgment for that of the trial court where the issue relates to the weight given to certain evidence or the credibility of the witnesses. Wilson v. Liberty Mut. Fire Ins. (Mont. 1995), 903 P.2d 785, 787, 52 St.Rep. 990, 991 (citing Burns v. Plum Creek Timber Co. (1994), 268 Mont. 82, 84, 885 P.2d 508, 509).

Accordingly, we hold that the District Court did not err in concluding that Topco failed to prove with sufficient certainty that any consequential damages arose from the State's breach of contract and we affirm the District Court on this issue.

### Issue 5.

Whether the District Court erred in failing to award Topco payment for acres cleared but not paid for by the State.

Topco argues that in addition to the PTW acres, several other areas had been omitted from measurement and Topco has never been paid for those areas. Topco contends that many of those areas had

12

been cleared and grubbed by Topco and that all calculations relative to this missing acreage were based upon the State's own books.

In its Findings of Fact, the District Court determined that the contract required payment of all acreage contained within the construction limits plus 10 feet, yet the District Court failed to award Topco payment for additional acres cleared by Topco but not paid for by the State. The contract plans and specifications excluded only certain designated areas. The remainder of the area was within the construction limits.

Accordingly, we remand this issue to the District Court for calculation of those portions of the construction area falling within the clearing and grubbing contract yet omitted from payment by the State.

Issue 6.

Whether the District Court erred in changing venue
from Missoula County to Lewis and Clark County.

Topco filed this action in the Fourth Judicial District Court, Missoula County. The State moved for a change of venue arguing that Missoula County was not a proper place of trial for this action and that under § 25-2-121, MCA, the proper place of trial is either Lewis and Clark County or Lincoln County. The District Court granted the State's motion and ordered the matter transferred to the First Judicial District Court, Lewis and Clark County.

A district court's determination of venue is a legal conclusion and our standard of review is plenary. State v. Cooney (1995), 271 Mont. 42, 45, 894 P.2d 303, 305 (citing Emery v.

13

Federated Foods, Inc. (1993), 262 Mont. 83, 87, 863 P.2d 426, 429).

The general rule is that the proper place of trial for actions upon contracts is either the county in which the defendants reside at the commencement of the action, in this case Lewis and Clark County, or the county in which the contract was to be performed, in this case Lincoln County. Section 25-2-121(1), MCA. However, under § 25-2-126(1), MCA, there is an exception for actions in which the State is a defendant. This section states in pertinent part:

> (1) The proper place of trial for an action against the state is in the county in which the claim arose or in Lewis and Clark County. *In an* action *brought by a resident of the state, the county of his residence is also a proper place of trial.* [Emphasis added.]

Section 25-2-126(1), MCA. Topco maintains its principal place of business in Seeley Lake which is located in Missoula County. Thus, under this statute, Missoula County is also a proper place of trial. The statute applies as an exception to the general rule for actions in which the State is a defendant. Kendall v. State (1988), 231 Mont. 316, 318, 752 P.2d 1091, 1092.

It is well established that when more than one county is designated as a proper place of trial for an action, an action brought in any such county is brought in a proper county and a motion for change of venue may not be granted. Section 25-z-115, MCA; Gabriel v. School Dist. No. 4, Libby (1994), 264 Mont. 177, 179, 870 P.2d 1351, 1352; Melroe v. Doyle (1989), 239 Mont. 524, 525, 781 P.2d 1134, 1135. "[O]nce an action has been filed in a proper county the District Court cannot grant a motion to have it removed." Petersen v. Tucker (1987), 228 Mont. 393, 396, 742 P.2d

14

483, 485 (citing Seifert v. Gehle (1958), 133 Mont. 320, 322, 323 P.2d 269, 270).

Consequently, the District Court erred by granting the State's motion to change venue. However, the error in this case was harmless because it did not affect Topco's substantial rights. Abbey v. City of Billings Police Com'n (1994), 268 Mont. 354, 364, 886 P.2d 922, 928 (citing Barrett v. Asarco Inc. (1990), 245 Mont. 196, 799 P.2d 1078).

While contending that Topco's appeal of this issue was not timely, the State fails to develop its argument or cite authority in support thereof. It is not the function of this Court on appeal to advocate a party's position, to develop arguments or to locate and cite supporting or opposing authority. Accordingly, we will not further address the State's contention in this regard.

Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

15