No. 96-030

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996


MARTIN "DOC" BASTA,

       Plaintiff and Appellant,

  vs.

CRAGO, INC., d/b/a PRINTING
CENTER, a Montana corporation,

       Defendant and Respondent.



FILED

DEC 31 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:  District Court of the Eighth Judicial District,
                In and for the County of Cascade,
                The Honorable Marge Johnson, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          John F. Lynch, Lynch & Chisholm, Great Falls,
          Montana

      For Respondent:

          Lon T. Holden, Jardine, Stephenson, Blewett &
          Weaver, Great Falls, Montana


                Submitted on Briefs:  July 18, 1996

                        Decided:  December 31, 1996

Filed:

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal from the Eighth Judicial District Court, Cascade County. Following a hearing, the District Court granted Defendant Crago's motion for summary judgment. From this judgment, Plaintiff Basta appeals. We affirm.

The sole issue raised on appeal is whether the District Court erred when it concluded that Basta and Crago did not enter into a written contract of employment for a specific term for the purposes of § 39-2-912(2), MCA (1991).

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant Crago, Inc. (Crago) operates a locally-owned general printing business known as the Printing Center located in Great Falls, Montana. Craig Barber (Barber) is the president, chief executive officer and the only shareholder of the business. Therefore, Barber is Crago's agent. Plaintiff Martin "Doc" Basta (Basta) worked at a different local printing shop in Great Falls from 1971 until Barber hired him to work as shop foreman at the Printing Center in March 1992.

In December 1991, Barber contacted Basta about hiring him to work for the Printing Center. Over the next two months, Barber sent Basta two letters and a memorandum concerning their employment negotiations. The memorandum, dated January 23, 1992, referred to "Terms of employment" and was signed by Barber. The memorandum set forth several items including medical insurance coverage, vacation time, a salary and bonus figure for the first year of employment, a salary and undetermined bonus system for the second year of

2

employment, and a description of the employment position and responsibilities. Barber sent the memorandum to Basta with a letter explaining that the memorandum was a "written copy of what we had talked about previously" and requesting that Basta contact Barber so that they could discuss Basta's starting date. On March 1, 1992, Basta began working at the Printing Center.

Barber had hired Basta to perform the shop foreman duties that Barber had performed previously. Barber planned for Basta to take over Barber's old duties so that Barber could attend to matters concerning expansion of the business. However, Barber's plans were not realized and the economic conditions of the business declined. In response to this economic decline, Barber determined that the payroll must be reduced. Consequently, he discharged Basta on February 26, 1993, and one other employee.

On February 23, 1994, Basta filed his complaint, alleging that he had been wrongfully discharged without good cause pursuant to § 39-2-904(2), MCA (1991). Crago answered and denied the allegations of Basta's complaint. Crago then moved for summary judgment, alleging that Basta's discharge was for good cause. To support the motion, Crago submitted an affidavit indicating that Basta was terminated from employment due to financial stresses within the corporation, a legitimate business reason. The District Court initially denied Crago's summary judgment motion. However, Crago filed a motion for reconsideration. Initially, Basta opposed Crago's motion for reconsideration. However, Basta ultimately conceded that Crago's motion should be granted and requested leave

3

to file an amended complaint. On September 6, 1995, the District Court granted both Crago's motion for reconsideration and Basta's motion for leave to file an amended complaint.

Basta's amended complaint set forth two claims: 1) breach of contract and 2) breach of the implied covenant of good faith and fair dealing. Crago answered and denied the allegations. Thereafter, Crago filed a Motion for Summary Judgment Concerning the Amended Complaint. Crago alleged that the parties never entered into a written contract for a specific term, and, therefore, Basta's claims were barred by Montana's Wrongful Discharge From Employment Act, § 39-2-901, et seq., MCA (1991). After reviewing the briefs and considering the testimony of Basta and the arguments of counsel at the hearing on the motion, the District Court granted Crago's motion for summary judgment on December 12, 1995. It is from this judgment that Basta appeals.

## STANDARD OF REVIEW

Our standard of review for an appeal from an order granting summary judgment is *de novo*. Motarie v. Northern Montana Joint Refuse Disposal Dist. (1995), 274 Mont. 239, 242, 907 P.2d 154, 156. We review the order granting summary judgment using the same evaluation as did the district court, based on Rule 56, M.R.Civ.P. Motarie, 907 P.2d at 156. Our inquiry is set out as follows:

> The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a

4

matter of law. We review the legal determinations made by a district court as to whether the court erred.

Bruner v. Yellowstone County (1995), 272 Mont. 261, 264-65, 900 P.2d 901, 903 (citations omitted).

In the case before us, Basta has not raised an issue concerning any genuine issues of material fact. Instead, Basta only raises the legal issue whether Basta and Crago entered into a written contract of employment for a specific term. Accordingly, we review the District Court's conclusion that Montana's Wrongful Discharge From Employment Act (the Act) bars Basta's breach of contract and breach of covenant claims under § 39-2-913, MCA (1991), because the parties did not enter into a written contract of employment for a specific term as required by § 39-2-912(2), MCA (1991), to determine if the court was legally correct.

## DISCUSSION

**Did the District Court err when it concluded that Basta and Crago did not enter into a written contract of employment for a specific term for the purposes of § 39-2-912(2), MCA (1991)?**

Basta contends that he and Barber entered into a written contract of employment for a specific term, and, therefore, the Act does not bar his claims for breach of contract and breach of implied covenant of good faith and fair dealing. Crago responds that Barber and Basta did not enter into a written contract of employment for a specific term, and, therefore, the Act does bar Basta's claims. We conclude that the District Court correctly determined that the parties did not enter into a written contract

5

of employment for a specific term, and that the court properly granted Crago's motion for summary judgment.

The Act provides that "no claim for discharge may arise from tort or express or implied contract." Section 39-2-913, MCA (1991). We have determined that the plain meaning of "claim for discharge" is simply "those claims for damages caused by an asserted wrongful discharge." Beasley v. Semitool, Inc. (1993), 258 Mont. 258, 261, 853 P.2d 84, 86. Therefore, not all tort or contract claims are barred by § 39-2-913, MCA (1991), merely because they arise from employment. Beasley, 853 P.2d at 86. Rather, only those tort or contract claims which are "for discharge" will be barred by § 39-2-913, MCA (1991). Beasley, 853 P.2d at 86.

In the present case, Basta bases both his breach of contract and breach of covenant claims on his discharge. First, Basta alleges that Crago violated the contract with Basta "by virtue of terminating [Basta] on February 26, 1993. . . . ." Second, Basta alleges that Crago violated its obligation to act in good faith with Basta "in that termination was false and dishonest in fact." By virtue of this language contained in Basta's amended complaint, we conclude that both claims are "completely and inextricably intertwined with and based upon" Basta's discharge. See Beasley, 853 P.2d at 87. Consequently, Basta's claims are "claims for discharge" and will be barred under § 39-2-913, MCA (1991), unless one of the exemptions to the Act applies.

The exemptions to the Act are set forth as follows:

6

**39-2-912.** **Exemptions.** This part does not apply to a discharge:

    (1) that is subject to any other state or federal statute that provides a procedure or remedy for contesting the dispute. Such statutes include those that prohibit discharge for filing complaints, charges, or claims with administrative bodies or that prohibit unlawful discrimination based on race, national origin, sex, age, handicap, creed, religion, political belief, color, marital status, and other similar grounds.

    (2) of an employee covered by a written collective bargaining agreement or a written contract of employment for a specific term. [Emphasis added.]

The issue raised on appeal is whether the parties entered into a written contract of employment for a specific term. If they did, Basta's claims are exempted from the Act pursuant to § 39-2-912(2), MCA (1991), and will not be barred under § 39-2-913, MCA (1991). If not, Basta's "claims for discharge" are preempted by the Act pursuant to § 39-2-913, MCA (1991), and will be barred.

In order for the exemption under § 39-2-912(2), MCA (1991), at issue here, to apply, there must be (a) a written contract *and* (b) this contract must be for a specified term. Under the plain language of the statute, if either the contract is not in writing or it is not for a specified term, then the exemption does not apply, and Basta's claims will be barred. Without so deciding, we will simply assume for purposes of this appeal that Crago's memorandum to Basta was a written contract and that Basta's employment was therefore governed by a written contract. We make this assumption because our determination that, regardless, the contract was not for a specified term, is dispositive.

At best, the memorandum simply states Basta's proposed salary for the first two years of his employment. In fact, nothing in the

7

memorandum sets out a specific term, whether for two years or more. The memorandum not only fails to specify a termination date; it does not even designate a hiring date. Indeed, at the time Basta received the memorandum, the parties were still negotiating Basta's starting date. This is evidenced by the letter Barber sent with the memorandum wherein Barber asked Basta to call him to discuss Basta's starting date.

Moreover, Basta's testimony at the summary judgment hearing held on November 6, 1995, shows that he was unclear as to what the parties had actually agreed would be the "specific term" of Basta's employment:

> Q:   [Mr. Lynch, Basta's attorney]   Now, does that agreement [referring to the memorandum]--it--what are the terms of that agreement?  Without reading it, I mean, you know, how long was your employment with him to be?
>
> A:   [Basta]   When we first talked about this and came out with this, he said I would be with him for at least five years. . . . And he told it in front of me and my wife, hell, I would be there for five years.  He had no plans of me going anywhere, that he was going to keep me employed.  So, then he came up with this "I'll start you at this, and after a year I'll start you at this figure, and if my business progresses, you'll progress."
>
>   . . .
>
> Q:   And let me ask you this.  That agreement doesn't say anything--how many years does that agreement cover?
>
> A:   Two years.
>
> Q:   Okay.  Was there--when you got that agreement, was there any discussion about the five years?
>
> A:   Yes, there was.  Like I say, he said it's good for five years.  Or longer.  He just said, "I'm not going to let you go."  I just took the man for his

8

word. I didn't think I'd have to get a written contract or anything else. He says, "I'm going to do this for you the first year and second year. And you're going to be with me." I trusted him. And I thought, you know, this is a good way for me to go. It's what I like to do is to get shops going. So I didn't say, "Well, okay, you've got to write up a five-year agreement or a two-year agreement" or anything. What he wrote down here I took to be a good agreement, that he would face up to it as a man.

Q: But what did you understand that agreement to be, as far as how long? That written agreement?

A: Two years.

Q: And why is that?

A: Because that's all he did. He told me if--because it has down the first year I'll get so much and the second year I'll get so much. And he signed it. I didn't know I'd have to have it notarized or anything else. Or that I'd have to sign it.

Q: Did he say in the cover letter or that agreement that if there was any disagreement with it on your part, that you would work it out?

A: Yes. That's what it says.

Q: And did you disagree with it?

A: No, I did not. I accepted what he had written down here and gave to me.

Q: And did you feel that that was your agreement, what was written down?

A: Yes, I did.

After reviewing Basta's testimony, it is apparent that while Basta regarded the memorandum as covering the first two years of his employment, he anticipated that his employment with Crago would last for "at least five years." However, nothing in the evidence supports the conclusion that the parties agreed to either a two-year or a five-year employment term. Rather, the evidence supports

9

the conclusion that the parties failed to agree to any specific term of employment at all; there was simply no meeting of the minds on the term of Basta's employment--whether it was two years, five years or longer. Therefore, based on the uncertain nature of both Basta's testimony and the memorandum, we conclude that the parties did not enter into a contract of employment "for a specific term."

Basta also alleges that Crago violated the implied covenant of good faith and fair dealing and Basta seeks damages for emotional distress. As we stated above, Basta's claims are not exempted from the Act under § 39-2-912(2), MCA (1991), because the parties did not enter into a written contract of employment for a specific term. Therefore, § 39-2-913, MCA (1991), controls and Basta's tort claim for breach of implied covenant of good faith is barred. Furthermore, under the Act, Basta cannot seek damages for emotional distress. Section 39-2-905(3), MCA (1991). See also Dagel v. City of Great Falls (1991), 250 Mont. 224, 238, 819 P.2d 186, 194.

In sum, we conclude that Basta and Crago did not enter into a written contract of employment "for a specific term." Therefore, Basta's contract and covenant claims are not exempted from the Act pursuant to § 39-2-912(2), MCA (1991). Accordingly, we affirm the District Court's conclusion that Basta's breach of contract and breach of implied covenant of good faith and fair dealing are barred by the Act pursuant to § 39-2-913, MCA (1991).

Affirmed.

_____
Justice

10

We Concur:

_____
                Chief Justice

_____



_____


_____
                Justices

11

Justice Terry N. Trieweiler dissenting.

I conclude that the parties did enter into a written contract of employment for a specific term within the meaning of § 39-2-912(2), MCA (1991), and therefore, dissent from the majority opinion.

Martin "Doc" Basta worked for Advanced Litho Printing Shop in Great Falls for twenty-one years until he was induced to leave that employment with a written promise from Craig Barber, owner and operator of the Printing Center, that he would be employed on more favorable terms at that business for at least two years. However, less than one year after he began work for Barber, he was told that the Printing Center could not afford him and his employment was terminated.

Section 39-2-912(2), MCA (1991), provides that the Wrongful Discharge from Employment Act found at §§ 39-2-901 to -915, MCA, does not preclude a person covered by a written contract of employment for a specific term from enforcing the terms of the employment contract.

Section 28-2-102, MCA, sets forth the necessary elements of a contract. It provides as follows:

> It is essential to the existence of a contract that there be:
> (1) identifiable parties capable of contracting;
> (2) their consent;
> (3) a lawful object; and
> (4) a sufficient cause or consideration.

The document which was submitted to Basta after being prepared and signed by Craig Barber, and which is relied on by Basta as a

12

"written contract of employment for a specific term" provided as follows:

January 23, 1992

TO:        Doc Basta
FROM:      Craig Barber
RE:        Terms of employment

INSURANCE              The Printing Center will pay medical
                       insurance for you and your wife.

VACATION &             3 weeks paid vacation
DAYS OFF               plus 5 days off as needed

1ST YEAR               $35,000 a year salary plus a bonus,
                       not to exceed $1000 if predetermined
                       goals are met.

2ND YEAR               $36,000 a year salary with a bonus
                       system.
                       (to be determined)

POSITION &             Position:  Working Foreman
RESPONSIBILITIES
                       Camera
                             Shooting
                             Stripping
                             Training

                       Route & schedule jobs

                       Quality control

                       Employee supervision and training

                       Involvement in customer relations as
                       needed

                       Assisting with the transition from
                       conventional camera work to computer

                       Other duties as need arises

I hope that you find this agreeable and as we had
discussed.

Sincerely,
/s/ Craig Barber
Craig Barber

13

The document obviously included identification of the parties, the consent of Craig Barber, a lawful object, and sufficient consideration. There is no question presented regarding the capacity of either party to contract; Barber simply contends, and the District Court agreed, that because Basta had not signed the agreement, his consent had not been provided, and therefore, the agreement was incomplete. The District Court gave the following rationale for its decision:

> The Court found quite credible the Plaintiff's testimony, that he left a good job in reliance upon the Defendant's offer of employment for a term of at least two years, but that offer had to be finalized into a "written contract of employment for a specific term," if it is to take the Plaintiff's case outside the parameters of the Wrongful Discharge Act. Testimony presented by the Plaintiff established that the Plaintiff accepted the Defendant's offer by leaving his prior employment and beginning work with the Defendant, but his acceptance was not in writing as presented to the Court, but an acceptance based on performance. Unless both the offer and acceptance is finalized in the form of written contract, it does not appear to be exempted from the requirements of the Wrongful Discharge Act. Section 39-2-912, MCA (1991).

I disagree. When Basta actually went to work for Barber and fully performed, according to the terms of the contract, from March 1, 1992, until he was terminated on February 26, 1993, he accepted the terms proposed by Barber by performing his responsibilities set forth in the contract. Section 28-2-503, MCA, provides for acceptance in the following manner:

> (1) Performance of the conditions of a proposal or the acceptance of the consideration offered with a proposal is an acceptance of the proposal.
> (2) A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the

14

obligations arising from it, so far as the facts are known or ought to be known to the person accepting.

Based on Basta's acceptance by performance of the contract terms proposed by Barber, I conclude that there was a completed contract of employment for a specific term and that all essential terms of the contract were in writing. I would conclude that, when the employer has set forth the conditions of employment in a written document which includes the term of employment and is signed by the employer, the requirements of § 39-2-912, MCA (1991), have been satisfied. The purpose, after all, of that section's requirement that there be a written contract is to protect the employer by limiting his employee's remedies to the provisions of the Wrongful Discharge From Employment Act, unless it can be documented that the employer offered him or her something greater than the Act's protections. Here, there is no question about the terms of employment which were offered by the employer. Therefore, the requirements of § 39-2-912(2), MCA (1991), have been satisfied.

However, based on Basta's testimony to the effect that he felt Barber had committed to a term greater than two years during their conversations, the majority concludes that the contract in question does not provide for a specific term. I disagree again.

The written contract, which is set forth in this opinion, provides for a first year and a second year. It provides for the salary to be paid during each year, and a bonus to be determined at

15

a later date. Based on the plain language in the contract, it provided for a minimum term of two years employment.

At most, the term of employment in defendant's proposed written contract is unartfully drawn and leaves some question about whether the term was to extend beyond two years. However, as we have repeatedly held, the author of a written agreement should not be able to avoid liability for performance of that agreement based on ambiguities which are his or her own creation. Those ambiguities are to be construed in favor of the party who did not draft the agreement. *See, e.g., Topco, Inc. v. State* (1996), 275 Mont. 352, 360, 912 P.2d 805, 810; *Mueske v. Piper, Jaffray & Hopwood, Inc.* (1993), 260 Mont. 207, 216, 859 P.2d 444, 449-50; *St. Paul Fire & Marine Ins. Co. v. Cumiskey* (1983), 204 Mont. 350, 363, 665 P.2d 223, 229.

For these reasons, I would reverse the order of the District Court and remand to that court for further evidence regarding any defenses Barber might have to Basta's contract claim.

_____
Justice

Justices William E. Hunt, Sr., and W. William Leaphart join in the foregoing dissenting opinion.

_____
Justice

_____
Justice

16

December 31, 1996

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

John F. Lynch
Lynch & Chisholm
P.O. Box 2265
Great Falls, MT 59403-2265

Lon T. Holden
Jardine, Stephenson, Blewett & Weaver
P.O. Box 2269
Great Falls, MT 59403-2269

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy