Joseph H. WESTON *v.* STATE of Arkansas

CR 75-49                                   528 S.W. 2d 412

Opinion delivered October 20, 1975

*Cearley & Gitchel,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Gary Isbell,* Asst. Atty. Gen., for appellee.

LeRoy Autrey, Special Justice. Joseph H. Weston, the editor and publisher of the Sharp Citizen, a weekly newspaper of Cave City, has appealed his conviction in the Clay County Circuit Court of the crime of criminal libel as defined in Section 41-2401 *et. seq., Arkansas Statutes.* The infor-

mation under which Weston was convicted alleged that he had on November 30, 1973, published in the Sharp Citizen "a false, malicious and defamatory libel" which "tended to impeach the honesty, integrity, veracity and reputation of . . . Liddell Jones," the Sheriff of Clay County. The information charged and the undisputed evidence showed that the offending article in the Sharp Citizen was headlined as follows:

"SHARP CITIZEN MAKES A MISTAKE IN REPORTING STORY OF CORNING AND DISCOVERS THAT NARCOTICS RACKET FLOURISHES IN CLAY COUNTY AND CORNING UNDER DIRECTION OF SHERIFF LIDDELL JONES, AN APPOINTEE OF GOVERNOR DALE BUMPERS."

The article below this headline included the following statement:

"In the meantime, however, we also discovered that law enforcement in Clay County has dropped to a low level again under the direction of the present sheriff, Liddell Jones, appointee of Governor Dale Bumpers who took office following the passing away of Sheriff Pond. It was Sheriff Liddell Jones and his deputies who made the threats of violence to witnesses of the death of Street Shaw."

Mary D. Shaw, the widow of Street Shaw, deceased, testified that shortly after her husband had been shot and killed on October 11, 1973, Weston had come to her house for an interview to find out how her husband had been killed. Mrs. Shaw testified that she gave Weston the information which is set forth in the above set out newspaper headline and article. She said that she told Weston that William Donald, who was in jail wher her husband was killed, told her that he could get dope from Sheriff Jones.

Sheriff Jones had served as Sheriff of Clay County for about 15 months, succeeding Sheriff Bill Pond who had been killed in an accident. He testified that he had made the complaint against Weston; that the offending headline and the

story appearing in the Sharp Citizen were false; that since he had been sheriff he had made arrests and pursued prosecutions in 20 to 30 drug and narcotics violations; and that he had been subjected to some degree of ridicule, scorn and public hatred from the offending headline and article in the Sharp Citizen.

The trial court jury instructions included the usual instructions in criminal prosecutions and the following:

## COURT'S INSTRUCTION NO. 3

"It is unlawful, a crime, and a felony for any person to maliciously defame, either by writing, printing, or by signs or pictures or the like tending to blacken the memory of one who is dead, or impeach the honesty, integrity, veracity, virtue or reputation or to publish the natural defects of one who is living and thereby expose him to hatred, contempt and ridicule as set out in Section 41-2401 of the *Arkansas Statutes.*"

## COURT'S INSTRUCTION NO. 5

"In all prosecutions for libel the truth may be given in evidence in justification thereof."

The Court refused the below set out instructions requested by the appellant:

## REQUESTED INSTRUCTION NO. 1

"You are instructed that there are situations in which the law protects the author of a defamatory statement from prosecution for Criminal Libel. Where this protection is afforded a privilege is said to exist and even though the statement made be untrue, the author may not be subjected to criminal prosecution unless the statement was published with actual knowledge of its falsity or with reckless disregard of whether it was false or not. One area in which such a privilege exists is the area of comment upon matters of public concern or criticism of the official conduct of public officials.

"The Constitutional guaranty of freedom of speech and of the press, contained in the First Amendment, prohibits the imposing of criminal sanctions for truthful criticism of public officials, and criminal liability may be imposed for false defamatory criticism of the official conduct of a public official only if the statement is made with express malice, which is defined as actual knowledge that the statement is false, or a reckless disregard as to whether or not it is true or false."

## REQUESTED INSTRUCTION NO. 2

"When we speak of express malice in criminal libel case the term has a very distinct meaning apart from its ordinary use. A statement made with express malice is one made with actual knowledge that it is false or with reckless disregard of whether it is false or not. Therefore, even if you find that the statement was false and was made out of hatred you must acquit the defendant unless you also find beyond a reasonable doubt that the defendant either knew the statement to be false or published it with a reckless disregard of whether it was false or not. To find the statement was vehement, caustic, or unpleasantly sharp is not enough."

The jury's verdict found the appellant guilty and fixed his punishment "at a fine of $4,000.00 and/or imprisonment in the penitentiary for a period of three months." The judgment of the Court provided that the appellant should "be fined, in accordance with the verdict returned by the jury, $4,-000.00, and that he be imprisoned in the state penitentiary for a period of three months."

The appellant contends that his conviction should be dismissed on the grounds that *Arkansas Statutes*, Section 41-2401 *et. seq.*[1], is violative of the rights guaranteed under the First and Fourteenth Amendments to the Constitution of the

---

[1]*Arkansas Statutes*, "Section 41-2401 *Libel Defined*. A libel is a malicious defamation, expressed either by writing, printing, or by signs or pictures, or the like, tending to blacken the memory of one who is dead, or to impeach the honesty, integrity, veracity, virtue, or reputation, or to publish the natural defects, of one who is living, and thereby expose him to public

United States in that the statute (a) does not require that a statement alleged to be libelous be false, (b) does not require that the allegedly libelous statement be made with actual malice when the statement refers to a public official or a matter of public concern, and (c) is so vague, general and indefinite in its terms that it fails to apprise one of the conduct proscribed. Appellant also contends that the Trial Court erred in refusing the appellant's requested instructions 1 and 2 above set out and that the Trial Court erred in entering judgment and pronouncing sentence on the jury's verdict.

The appellee contends (a) that the appellant's requested instructions 1 and 2 correctly states the constitutional limitation on a prosecution for criminal libel; (b) that the Trial Court's refusal to give instructions requested by the appellant resulted in the statute being unconstitutionally applied to the appellant; and (c) that this case should be reversed and remanded for a retrial. The appellee contends that "a judicial restriction of the statutory scheme in compliance with the holdings of the United States Supreme Court will avoid the necessity of striking the statute in question as unconstitutional, and then the statute will have only been unconstitutionally applied to the appellant."

Appellant's requested instructions 1 and 2 above set out follow the rule established by the U. S. Supreme Court in *Garrison* v. *Louisiana,* 379 U.S. 64, 78; 85 S. Ct. 209, 217 (1964). There the Court held that the Louisiana defamation statute was invalid under the First and Fourteenth Amendments to the Constitution of the United States. In so holding the Court applied the rule laid down in a civil libel case brought by a public official, *New York Times* v. *Sullivan,*

---

hatred, contempt and ridicule.

"Section 41-2402 *Penalty for Libel.* Every person, whether writer, printer or publisher, convicted of the crime of libel, shall be fined in any sum not exceeding five thousand dollars ($5,000.00) and may also be imprisoned, not exceeding one (1) year at the discretion of the jury who shall pass on the case; and when any such case shall be decided without the intervention of a jury, then at the discretion of the Court.

"Section 41-2403 *Truth as justification for libel.* In all prosecutions for libel under the provisions of the preceding sections, the truth thereof may be given in evidence in justification."

376 U.S. 254, 84 S. Ct. 710 (1964). In *Garrison,* the U.S. Supreme Court held that the Louisiana defamation statute was unconstitutional because it directed punishment for true statements made with "actual malice," contrary to the rule laid down in *New York Times,* and in addition:

> "The statute is also unconstitutional as interpreted to cover false statements against public officials. The New York Times standard forbids the punishment of false statements, unless made with knowledge of their falsity or in reckless disregard of whether they are true or false. But the Louisiana statute punishes false statements without regard to that test if made with ill-will; even if ill-will is not established, a false statement concerning public officials can be punished if not made in the reasonable belief of its truth."

Like the Louisiana defamation statute in *Garrison, Arkansas Statutes,* Section 41-2401 *et. seq.,* fails to prohibit punishment for truthful criticism. Section 41-2403, *Arkansas Statutes,* provides that truth "may be given in evidence in justification," but this falls short of the *New York Times* rule which "absolutely prohibits punishment for truthful criticism." *Garrison* v. *Louisiana,* 379 U.S. 64, 78; 85 S. Ct. 209, 217. Under the rule laid down in *Garrison,* truth is a defense even when the offending publication is not made "with good motives and for justifiable ends" as provided in Article 2, Section 6, of the Arkansas Constitution.[2]

Also, like the Louisiana defamation statute in *Garrison,* the Arkansas criminal libel statute fails to prohibit punishment for false statements regarding public officials, "unless made with knowledge of their falsity or in reckless disregard of whether they are true or false." Nowhere in the Arkansas

---

[2]Article 2, Section 6, of the Arkansas Constitution provides:

"The liberty of the press shall forever remain inviolate. The free communication of thoughts and opinions is one of the invaluable rights of man; and all persons may freely write and publish their sentiments on all subjects, being responsible for the abuse of such rights. In all criminal prosecutions for libel the truth may be given in evidence to the jury; and, if it shall appear to the jury that the matter charged as libelous is true, and was published with good motives and for justifiable ends, the party charged shall be acquitted."

criminal libel statute is there any exception for criticism of a public official.

The appellee argues that this Court may limit the application of the Arkansas libel statute so that it meets the requirements of the First and Fourteenth Amendments to the U.S. Constitution as laid down by the U.S. Supreme Court in *New York Times* and *Garrison*, but this Court must reject the appellee's argument. While this Court must strive to uphold the constitutionality of a statute, it may not read words into a statute to save its constitutionality. This rule was well expressed in *Board of Commissioners of Red River Bridge District* v. *Wood et al*, 183 Ark. 1082, 40 S.W. 2d 435, 438 (1931) as follows:

"The rule requiring courts to uphold the statute, if there is any doubt as to whether the power of the Legislature exists under the Constitution, does not authorize the court to read words into the statute even to save its constitutionality. If the statute does not violate the Constitution, or if there is any doubt about whether it does or not, it is the duty of the court to uphold the statute, but, if there is no doubt about the statute being in conflict with the Constitution, then it is the duty of the court to uphold the Constitution and declare the act void, and it is only in cases where the language of the act will bear two constructions that the court is justified in adopting a construction that will sustain rather than one which will defeat it."

Clearly this Court has no authority to legislate or to construe a statute to mean anything other than what it says, if the statute is plain and unambiguous. *Burrell* v. *State*, 203 Ark. 1124, 160 S.W. 2d 218 (1942); *Johnson* v. *Lowman*, 193 Ark. 8, 97 S.W. 2d 86 (1936). The language of the statute here involved is clear and unambiguous, and this Court has no authority to amend the statute to conform to the rules laid down by the U.S. Supreme Court in *New York Times* and *Garrison*.

In *Commonwealth* v. *Armao*, 286 A. 2d 626, 632 (1972) the Supreme Court of Pennsylvania held that the Com-

monwealth's criminal libel statute was unconstitutional because (1) the statutory language made no provision for truth being an absolute defense and (2) no recognition was given in the statute to the reckless disregard and knowing falsity standards mandated by the U.S. Supreme Court in *New York Times* and *Garrison*. In rejecting the argument of the Commonwealth that the Court should construe this criminal libel statute to make it meet the requirements of the First and Fourteenth Amendments to the U.S. Constitution, the Court there stated:

> "The Commonwealth urges us to in effect re-draft the criminal libel statutes in accordance with First Amendment requirements. To accede to this request would be to undertake a wholly inappropriate judicial activity amounting to judicial legislation. See *State Board of Chiropractic Examiner* v. *Life Fellowship of Pennsylvania,* 441 Pa. 293, 300, 272 A. 2d 478, 482 (1971); *Saulsbury* v. *Bethlehem Steel Co.,* 413 Pa. 316, 320, 196 A. 2d 664, 667 (1964). Nor can we perceive any possible means of merely severing out the invalid portions of the statutes, for not only must the legislative body have intended the statute or section to be separable, but also the act must be capable of separation in fact. See *Saulsbury* v. *Bethlehem Steel Co., supra,* at 320-321, 196 A. 2d at 666-667."

The above set out jury instructions numbered 3 and 5 given by the Trial Court correctly stated the statutory law, but the Arkansas criminal libel statute is unconstitutional under the rulings of the U.S. Supreme Court in *New York Times* v. *Sullivan, supra,* and *Garrison* v. *Louisiana, supra.*

Reversed and dismissed.

FOGLEMAN, J., not participating.