NO. 95-333

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

STATE OF MONTANA,

     Plaintiff and Respondent,

  v.

RICHARD HELFRICH,

     Defendant and Appellant.

FILED

AUG 09 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable James Purcell, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

         Edmund F. Sheehy, Jr.; Cannon & Sheehy,
Helena, Montana (argued)

     For Respondent:

         Hon. Joseph P. Mazurek, Attorney General,
Carol Schmidt, Ass't Attorney General, (argued)
Helena, Montana

         Brad Newman, Deputy Silver Bow County Attorney,
Butte, Montana

Heard:    May 2, 1996
Submitted:   May 16, 1996
Decided:   August 9, 1996

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Richard Helfrich (Helfrich) appeals from the judgment entered by the Second Judicial District Court, Silver Bow County, accepting Helfrich's conditional guilty pleas to the misdemeanor offenses of criminal defamation and stalking. Pursuant to § 46-12-204(3), MCA, Helfrich reserved the right to appeal from the District Court's order denying his motion to dismiss the charges. We reverse and remand.

The following issues are raised on appeal:

1. Is § 45-8-212, MCA, which defines the offense of criminal defamation, unconstitutionally overbroad?

2. Did the District Court err in denying Helfrich's motion to dismiss the charge of stalking?

On or about May 30 or May 31, 1994, Helfrich distributed fliers in various locations in Silver Bow County, Montana. The fliers alleged that a named individual had engaged in criminal conduct. Based on Helfrich's distribution of the fliers, the Silver Bow Deputy County Attorney filed two complaints in Justice Court, the first alleging that Helfrich committed the offense of criminal defamation in violation of § 45-8-212(2), MCA, and the second alleging that Helfrich committed the offense of misdemeanor stalking in violation of § 45-5-220(1)(b), MCA. A bench trial was held in Justice Court and the court found Helfrich guilty of both offenses.

Helfrich appealed his convictions to the District Court and filed a motion to dismiss the charges of defamation and stalking on

2

the grounds that the criminal defamation statute is unconstitutional and that his actions did not constitute stalking within the meaning of the stalking statute. The District Court denied the motion to dismiss and Helfrich entered conditional guilty pleas reserving his right to appeal. This appeal followed.

1. Is § 45-8-212, MCA, which defines the offense of criminal defamation, unconstitutionally overbroad?

In reviewing the constitutionality of a statute enacted by the legislature, this Court presumes that the statute is constitutional. State v. Lilburn (1994), 265 Mont. 258, 266, 875 P.2d 1036, 1041, *cert. denied,* 115 S.Ct. 7.26 (1995) (citing Montana Auto Ass'n v. Greeley (1981), 193 Mont. 378, 382, 632 P.2d 300, 3031. The reviewing Court must adopt a construction of the statute which renders the statute constitutional in preference to one which renders it invalid. Monroe V. State (1994), 265 Mont. 1, 3, 873 P.2d 230, 231. The party challenging the constitutionality of the statute carries the burden of proof. Monroe, *873* P.2d at 231; GBN, Inc. v. Montana Dep't of Revenue (1991), 249 Mont. 261, 265, 815 P.2d 595, 597.

In reviewing statutes which have been challenged under the doctrine of overbreadth, this Court has stated that:

> "[A]n individual whose own speech or expressive conduct may validly be prohibited or sanctioned is permitted to challenge a statute on its face because it also threatens others not before the court--those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid." *Brockett v. Spokane Arcades, Inc. (1985), 14721 U.S. [491], 15041, 105 S.Ct. 2794, 2802, 86 L.Ed.2d* 394, 405-406. Thus, the statute may be unconstitutional on its face even though it would be constitutional as applied to appellant.

State v. Lance (1986), 222 Mont. 92, 99, 721 P.2d 1258, 1263. The statute at issue, § *45-8-212,* MCA, provides:

> (1) Defamatory matter is anything which exposes a person or a group, class, or association to hatred, contempt, ridicule, degradation, or disgrace in society or injury to his or its business or occupation.
> (2) Whoever, with knowledge of its defamatory character, orally, in writing, or by any other means communicates any defamatory matter to a third person without the consent of the person defamed commits the offense of criminal defamation and may be sentenced to imprisonment for not more than 6 months in the county jail or a fine of not more than $500, or both.
> (3) *Violation of subsection (2) is justified if:*
> *(a) the defamatory matter is true and is communicated with good motives and for justifiable ends;*
> (b) the communication is absolutely privileged;
> (c) the communication consists of fair comment made in good faith with respect to persons participating in matters of public concern;
> (d) the communication consists of a fair and true report or a fair summary of any judicial, legislative, or other public or official proceedings; or
> (e) the communication is between persons each having an interest or duty with respect to the subject matter of the communication and is made with the purpose to further such interest or duty.
> (4) No person shall be convicted on the basis of an oral communication of defamatory matter except upon the testimony of at least two other persons that they heard and understood the oral statement as defamatory or upon a plea of guilty. [Emphasis added.]

In the instant case, Helfrich contends that § 45-E-212, MCA, is overbroad because the statute allows a criminal conviction for an alleged defamation by a lesser standard than that which is required in a civil action for defamation. In a civil action, truth is an absolute defense barring any recovery by the plaintiff. New York Times, Co. v. Sullivan (1964), 376 U.S. 254, 277-78, 84 S.Ct. 710, 724-25, 11 L.Ed.2d 686. Helfrich contends that truth should also be an absolute defense to a criminal prosecution for defamation. He notes, however, that under § 45-8-212(3), MCA,

4

truth alone is not sufficient.  Rather, the statute requires not only a showing of truth but also a showing that the alleged defamatory matter "is communicated for good motives and for justifiable ends."

In Madison v. Yunker (1978), 180 Mont. 54, 67, 589 P.2d 126, 133, this Court adopted the defamation standard set forth in New York Times.  One of the principles established in New York Times is that truth is an absolute defense.[1]  Helfrich argues, relying on New York Times, that a showing of good motives and justifiable ends is not required to defend a civil defamation action and such a showing should not be required to avoid criminal liability

As the State concedes, the vast majority of courts which have addressed the constitutionality of criminal defamation statutes which require, as a defense, that the alleged defamatory material be communicated with good motives and for justifiable ends, have declined to judicially narrow the statutes and, therefore, have found such statutes to be unconstitutional.  See., Tollett v. United States (8th Cir. 1973), 485 F.2d 1087; Gottschalk v. State (Alaska 1978), 575 P.2d 289; Weston v. State (Ark. 1975), 528 S.W.2d 412; People v. Ryan (Colo. 1991), 806 P.2d 935, *cert.*

---

[1] We note that this Court has previously recognized that "the truth of a defamatory statement of fact is a complete defense to an action for defamation."  Griffin v. Opinion Publishing Co. (1943), 114 Mont. 502, 507, 138 P.2d 580, 584.  However, later in that opinion, the Court also stated that "[e]very person has a right to comment on matters of public interest and general concern, *provided he does so fairly and with* an *honest purpose."* To the extent that this statement can be interpreted to require the defendant to prove good faith and justifiable ends as a defense, it is expressly overruled.

5

*denied,* 502 U.S. 860; Commonwealth v. Armao (Pa. 1972), 286 A.2d 626; Eberele v. Municipal Court (Cal. Ct. App. 1976), 127 Cal.Rptr. 594; State v. Powell (N.M. Ct. App. 1992), 839 P.2d 139. For example, the Pennsylvania Supreme Court declined, as a wholly inappropriate judicial activity, the state's request that the court narrow and, in effect, redraft Pennsylvania's criminal libel statute to comport with the First Amendment. Armao, 286 A.2d at 632.

In Armao, the Pennsylvania Supreme Court stated that "[h]ence, under present Pennsylvania law, a conviction for criminal libel could conceivably be based on a true statement, published maliciously, for non-justifiable ends tending to disgrace and degrade the libeled person." Armao 286 A.2d at 628 n.7. The court held that "the statutory language makes no provision for truth being an absolute defense. Likewise, no recognition is given the reckless disregard and knowing falsity standard mandated by New York Times and Garrison [Garrison v. Louisiana (1964), 379 U.S. 64, 78, 85 S.Ct. 209, 217, 13 L.Ed.2d 125]." Armao, 286 A.2d at 629. The Armao court concluded that:

> [o]nly a knowing falsity or reckless disregard of the truth are actionable in civil defamation. It would violate all sound and fundamental principles of justice to have a merely negligent statement an occasion for the imposition of criminal penalties, and the First Amendment as interpreted by the United States Supreme Court forbids such a result.

Armao, 286 A.2d at 632.

Similarly, in Weston, the Arkansas Supreme Court, in interpreting a statute which, like § 45-8-212, MCA, allowed truth

6

as a defense only if good faith and justification were proved, determined that the statute was unconstitutional. Recognizing that, although the statute provided that truth "may be given in evidence," the court nonetheless determined that this falls short of the <u>New York Times</u> rule which "absolutely prohibits the punishment of truthful criticism." <u>Weston,</u> 528 S.W.2d at 415 (citing <u>Garrison,</u> 379 U.S. at 78).

The <u>Weston</u> court noted that "under the rule laid down in <u>Garrison,</u> truth is a defense even when the offending publication is not made 'with good motives and for justifiable ends. .'" <u>Weston,</u> 528 S.W.2d at 415. The court rejected the state of Arkansas' request to limit application of the libel statute to comport with the First and Fourteenth Amendments. Accordingly, the court held that the statute was unconstitutional "under the rulings of the U.S. Supreme Court in <u>New York Times v. Sullivan</u>, *supra*, and <u>Garrison v. Louisiana,</u> *supra*." <u>Weston,</u> 528 S.W.2d at 416.

Section 45-8-212(3)(a), MCA, parallels the Arkansas statute in that it recognizes truth as a defense only if it *"is communicated with good motives and for justifiable ends."* Both the Arkansas Supreme Court and the Pennsylvania Supreme Court determined that statutes substantially the same as Montana's were inconsistent with the United States Supreme Court's rulings in both <u>New York Times</u> and <u>Garrison</u> because such statutes prohibited true speech unless "communicated with good motives and justifiable ends." As the <u>Weston</u> court recognized, truth is a defense even when the offending publication is not made "with good motives and for justifiable

7

ends." We agree with the reasoning and analysis of the Arkansas supreme Court and the Pennsylvania Supreme Court. Like the statutes at issue in <u>Weston</u> and <u>Armao</u>, § 45-8-212, MCA, impermissibly requires the defendant to prove that the material, even if true, was communicated in good faith and for justifiable ends. Unlike the civil standard for defamation set forth in <u>New York Times</u> and adopted by this Court in <u>Madison,</u> the statute does not allow for truth as an absolute defense.[2]

Article II, § 7 of the Montana Constitution provides that, in prosecutions for libel and slander, "the truth thereof may be given in evidence." The constitutional guarantee found in Article II, § 7 of the Montana Constitution, stands for something more than the proposition that truth is admissible. The provision means that, as a matter of state constitutional law, truth alone is sufficient as a defense--an absolute defense. The legislature cannot dilute this basic proposition by providing that while truth may be given in evidence, it is only a defense to a prosecution for libel or slander if it is for good motives and for justifiable ends. Accordingly, we determine that § 45-8-212, MCA, is unconstitutionally overbroad. It violates the First and Fourteenth Amendments of the United States Constitution as interpreted by the United States Supreme Court in <u>New York Times</u> and <u>Garrison</u> and Article II, § 7 of the Montana Constitution because, on its face,

---

[2] Although the record does not indicate whether the information communicated by Helfrich was true, the truth or falsity of the information is irrelevant as we determine that § 45-8-212, MCA, is unconstitutional on its face.

8

the statute prohibits truthful criticism when not communicated for good **motives** and justifiable ends.

*2.* Did the District Court err in denying Helfrich's motion to dismiss the charge of stalking?

Helfrich argues that since his act of distributing fliers cannot constitute criminal defamation, it likewise cannot constitute stalking under § 45-5-220, MCA. This argument ignores the fact that his challenges to the two statutes are not parallel. Helfrich made a facial challenge to the criminal defamation statute. That is, he argued, and we agree, that the criminal defamation statute is overly broad since, on its face, it prohibits truthful criticism when not communicated for good motives and justifiable ends. On the other hand, his attack on the stalking statute is an "as applied" challenge. The stalking statute is not facially defective since it specifically does not apply to constitutionally protected activities such as truthful communications. The burden is on the defendant to prove that his activity is constitutionally protected. Thus, although we assumed, *arguendo*, that the fliers were true for purposes of resolving the constitutionality of the criminal defamation statute, no such assumption is warranted in the context of the stalking statute. Rather, Helfrich must prove that his communication was, in fact, true in order to set the stage for his "as applied argument."

The complaint alleged "that the Defendant, RICHARD L. HELFRICH purposely or knowingly caused [Doe[3]] substantial emotional distress

---

[3] A pseudonym has been used in place of the actual name of the alleged victim.

9

by repeatedly harassing, threatening or intimidating [Doe] in person Or by other action, specifically by posting fliers at various locations within Silver Bow County alleging that [Doe] has engaged in criminal conduct." The State alleged that this conduct constituted the crime of misdemeanor stalking in violation of § 45-5-220(1)(b), MCA. Section 45-5-220, MCA, provides in relevant part:

> (1) A person commits the offense of stalking if the person purposely or knowingly causes another person substantialemotionaldistress or reasonable apprehension of bodily injury or death by repeatedly:
> (a) following the stalked person; or
> (b) harassing, threatening, or intimidating the stalked person, in person or by phone, by mail, or by other action, device, or method.
> (2) This section does not apply to a constitutionally protected activity.
> .

In the instant case, the record does not disclose whether the information contained in the fliers distributed by Helfrich was true or false. As we established earlier in this opinion, true communications are constitutionally protected; thus, truth is an absolute defense to a prosecution for criminal defamation as well as to a civil defamation suit

Assuming that Helfrich's fliers contained truthful information and were otherwise lawfully posted, then the act of posting the fliers may be a constitutionally protected activity within the exception of § 45-5-220(2), MCA. We say "may" because truth is not an absolute defense to a charge of stalking. Unlike a charge of criminal or civil defamation which focuses solely on the content of the speech, a charge of stalking focuses on conduct which may, but

10

does not necessarily, involve speech. Depending upon the nature, timing, context and frequency of the speech, a truthful communication may or may not be a constitutionally protected activity under § 45-5-220(2), MCA. That "you cheated on your tax return" may be a truthful statement but that does not necessarily mean that I have the right to telephonically remind you of that fact every morning at 2:00 a.m. A jury may well consider such conduct to be harassment under the stalking statute.

In the present case we are not called upon to decide whether a particular truthful statement contained in a flier is constitutionally protected from a stalking charge because there has been no threshold allegation or determination that the statement in question was truthful. To qualify as protected speech, it must at least be truthful. Beyond that, there must be a determination as to whether, albeit truthful, the statement is an element of conduct which is harassing, intimidating or threatening within the purview of the stalking statute. Even though the conduct may include protected speech, the State's interest in shielding the victim from such conduct may outweigh the defendant's constitutional protections. As Helfrich concedes, under <u>Madison,</u> not all speech is protected. <u>Madison,</u> 589 P.2d at 130; State v. Cooney (1995), 271 Mont. 42, 48-49, 894 P.2d 303, 307. For example, this Court has held that threats are not protected speech under the Fifth Amendment. <u>Cooney</u>, 894 P.2d at 307 (citing <u>Lance,</u> 721 P.2d at 1266). We also recognized that "[t]here are certain well-defined and narrowly limited classes of speech, the prevention and

11

punishment of which have never been thought to raise any Constitutional problems. These include the lewd and obscene, the profane, [and] the libelous. . . " Lance, 721 P.2d at 1265 (quoting Chaplinsky v. New Hampshire (1942), 315 U.S. 568, 571-72, 62 S.Ct. 766, 768-69, 86 L.Ed. 1031). Activities which are intended to embarrass, annoy or harass are not protected by the First Amendment. People v. Holt (Ill. 1995), 649 N.E.2d 571, 581 (citing Colten v. Kentucky (1972), 407 U.S. 104, 109, 92 S.Ct. 1953, 1956, 32 L.Ed.2d 584) (holding that actions taken solely to annoy and inconvenience are not given constitutional protection).

On the other hand, if the information in Helfrich's fliers were false or not lawfully posted, it would not qualify as a constitutionally protected activity and the § 45-5-220(2), MCA, exception would not prohibit a prosecution for stalking.

Without expressing any views as to whether the posting of truthful fliers constitutes the crime of stalking or is a constitutionally protected activity, we remand this matter pursuant to § 46-12-204(3), MCA, for the purpose of allowing Helfrich to withdraw his plea of guilty to the charge of stalking and, if he so chooses, to raise and prove that his conduct falls within the constitutionally protected activity exception of § 45-5-220 (2), MCA.

Reversed and remanded.

_____
                        Justice

12

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices