No. 97-488

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 140


STATE OF MONTANA,

Plaintiff and Respondent,

v.

LORI K. COMPAS, f/k/a
LORI K. MILLER,

Defendant and Appellant.


APPEAL FROM:    District Court of the Sixth Judicial District,
In and for the County of Park,
The Honorable William Nels Swandal, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Stephen Potenberg, Hesse & Potenberg, Livingston, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Pamela P. Collins,
Assistant Attorney General, Helena, Montana; Catherine L.
Truman, Deputy Park County Attorney, Livingston, Montana


Submitted on Briefs: January 30, 1998

Decided: June 9, 1998
Filed:


_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Defendant Lori Compas (Compas) appeals from the judgment entered by the Sixth Judicial District Court, Park County, on its Findings of Fact, Conclusions of Law and Order convicting her of two counts of disorderly conduct and from its denial of her motion to dismiss the charges. We affirm.

¶2 We address the following restated issues:

¶3 1. Does sufficient evidence support the convictions?

¶4 2. Does § 45-8-101, MCA, as applied in this case, violate Compas' free speech rights under the First Amendment to the United States Constitution?

¶5 Chan and Pam Libbey (the Libbeys) developed, own and operate the Yellowstone Edge RV Park (RV Park) located in the Paradise Valley of Montana. The RV Park is situated eighteen miles south of Livingston on land wedged between U.S. Highway 89 and the Yellowstone River. The Libbeys opened the RV Park in the summer of 1994, after complying with the required public hearing process and obtaining the necessary state and local permits.

¶6 Once the Libbeys started renting RV and camping spaces on the river, they began to experience repeated horn honking from vehicles traveling on the highway past the RV Park. The honking amounted to "someone just laying on the horn" the length of the RV Park. Several Park County residents described the RV Park as a scar on the Paradise Valley's landscape and the newspaper in Livingston reported that the RV Park had become a "persistent source of controversy" due to its location on the Yellowstone River.

¶7 While in the campground office on the evening of May 6, 1995, the Libbeys heard a loud, long horn honk consisting of three continuous blasts from a vehicle traveling north on Highway 89. Due to the ongoing horn honking problem, Chan left the RV Park in Pam's car and pursued the vehicle from which the honking emanated. He followed the vehicle, a white Toyota extended cab pickup, until he was close enough to get the license plate number. He then passed the pickup and obtained a physical description of the driver, a male with long straight blond hair, and one passenger, a female with short hair. Chan then returned to the RV Park. Several RV Park guests asked Pam why someone was holding down his or her horn while passing the campground.

¶8 The next morning the Libbeys again heard three long horn honking "blasts" from a white Toyota pickup as it traveled south on the highway past the RV Park. Chan again followed the vehicle in Pam's car and confirmed that it was the same Toyota pickup from the night before, driven by the same male; this time he was accompanied by two passengers, a male and a female. Chan identified the female passenger as the woman from the prior night's horn honking incident. The RV Park guests complained about the horn honking noise. The Toyota's description, its license plate number and the descriptions of the driver and passengers were provided to the Park County Sheriff's Office after each incident.

¶9    Compas subsequently was charged by complaint in the Park County Justice Court with two counts of disorderly conduct in violation of § 45-8-101(1)(b), MCA.  The alleged factual basis for the charges was that she disturbed the peace, making loud or unusual noises, by blowing the Toyota's horn while her friend drove past the RV Park on May 6 and 7, 1995.  Compas was convicted of both counts of disorderly conduct and appealed to the District Court.

¶10    At Compas' de novo bench trial on May 5, 1997, she admitted to the District Court that she frequently honked as she traveled past the RV Park and that she did, in fact, honk the Toyota's horn on the dates in question.  Compas testified that it was her "personal policy to honk every time [she] drove by the place" because she wanted to protest the RV Park and its location on the Yellowstone River.  In Compas' view, the RV Park was an eyesore which destroyed the view from the road and the river.

¶11   The District Court subsequently entered its Findings of Fact, Conclusions of Law and Order finding Compas guilty of two counts of disorderly conduct, making loud or unusual noises, in violation of § 45-8-101(1)(b), MCA.  The court found that, while a passenger in a white Toyota pickup, Compas "reached over and honked the horn for three long, steady bursts as it traveled the length of the park . . . in protest of the placement and operation of the park" and that "by honking a horn for several seconds on May 6 and 7, 1995 . . . [Compas] made loud and unusual noises."  It concluded that Compas "disturb[ed] the peace of the owners and guests of Yellowstone's Edge RV Park."  Judgment was entered accordingly and Compas appeals.

¶12  1.  Does sufficient evidence support the convictions?

¶13  We review the sufficiency of the evidence to support a criminal conviction to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  State v. Granby (1997), 283 Mont. 193, 199, 939 P.2d 1006, 1009 (citation omitted).  The same standard applies to our review of judge-made findings relating to a criminal conviction as to jury-made findings.  Granby, 283 Mont. at 199, 939 P.2d at 1010 (citation omitted).

¶14  Compas was convicted of committing the offense of disorderly conduct set forth in § 45-8-101(1)(b), MCA, by making loud or unusual noises.  She correctly observes that two elements must be proved beyond a reasonable doubt to support a conviction under § 45-8-101(1)(b), MCA: (1) that she knowingly disturbed the peace; and (2) that she did so by making loud or unusual noises.  Relying on State v. Ytterdahl (1986), 222 Mont. 258, 721 P.2d 757, Compas contends that insufficient evidence established the "disturbing the peace" element.  Her reliance is misplaced.

¶15  The defendant in Ytterdahl was convicted of the offense of disorderly conduct under § 45-8-101(1)(g), MCA, by disturbing or disrupting any lawful assembly or public meeting.   His conviction was based on his behavior at a

county commissioners' meeting relating to an easement action taken by the county on his property. Ytterdahl "holler[ed] and scream[ed] at the commissioners" and, after being informed that he could initiate a lawsuit regarding his complaint of trespass by the county, he "'mumbled a bad word,'" got up, stomped out and slammed the door so hard that the glass in the room rattled." Ytterdahl, 222 Mont. at 259-60, 721 P.2d at 758. We reversed Ytterdahl's conviction, ultimately holding that the evidence failed to show that his acts were sufficient to constitute the offense of disorderly conduct under § 45-8-101(1)(g), MCA. Ytterdahl, 222 Mont. at 261-62, 721 P.2d at 759-60. In reaching that result, we held that "disturbing the peace is synonymous with breaching the peace[,]" which we defined--for purposes of § 45-8-101(1)(g), MCA--as tending to create public tumult, or to incite others to break the peace or to cause an immediate disturbance by others. Ytterdahl, 222 Mont. at 261, 721 P.2d at 759. In addition, we weighed Ytterdahl's rights to protest an allegedly unlawful act of his government and to free speech against the state's interest in preserving the peace and concluded that Ytterdahl's actual conduct was not sufficient to constitute the charged offense of disorderly conduct. Ytterdahl, 222 Mont. at 262, 721 P.2d at 760.

¶16 Here, Compas contends that no evidence of record supports the District Court's finding that her horn honking resulted in a breach of the peace as we defined that term in Ytterdahl. Compas fails to recognize, however, that our definitions of breach of the peace in Ytterdahl were in the context of an alleged violation of subsection (g) of § 45-8-101(1), MCA, disturbing or disrupting any lawful assembly or public meeting; indeed, we specifically stated that the definitions were applicable "[t]o establish a misdemeanor under Section 45-8-101(1)(g), MCA . . . ." As discussed above, Compas was charged, and convicted, under § 45-8-101(1)(b), MCA.

¶17 Moreover, we expressly limited application of Ytterdahl to disorderly conduct charges brought under § 45-8-101(1)(g), MCA, in State v. Lowery (1988), 233 Mont. 96, 98-99, 759 P.2d 158, 159-60. Like Compas, the defendant in Lowery was charged with disorderly conduct under a different subsection of § 45-8-101(1), MCA, than that at issue in Ytterdahl. See Lowery, 233 Mont. at 99, 759 P.2d at 160.

¶18 In this case, the District Court found that Compas' horn blasts disturbed the Libbeys and the guests of the RV Park. It further found that the horn honkings caused an immediate disturbance to the Libbeys and their guests and thereby disturbed their peace. The record supports the court's findings and, indeed, Compas does not argue otherwise.

¶19 When viewed in the light most favorable to the prosecution, any rational trier of fact could have found that Compas knowingly disturbed the peace by making loud or unusual noises. We hold, therefore, that sufficient evidence supports the District Court's conviction of Compas of two counts of disorderly conduct.

¶20 2. Does § 45-8-101, MCA, as applied in this case, violate Compas' free

speech rights under the First Amendment to the United States Constitution?

¶21 Compas filed a pretrial motion to dismiss the disorderly conduct charges on the basis, in part, that her horn honking actions were protected speech under the First Amendment to the United States Constitution which could not be criminally sanctioned. The District Court orally denied the motion, concluding that Compas had not established an infringement of her free speech rights. Compas asserts error, contending that § 45-8-101, MCA, as applied in this case, violates her right to free speech.

¶22 A trial court's decision to deny a motion to dismiss in a criminal case is a conclusion of law which we review de novo. State v. Cooney (1997), 284 Mont. 500, 502, 945 P.2d 891, 892 (citation omitted). Our review of a trial court's determination on a question of constitutional law also is plenary. State v. Schnittgen (1996), 277 Mont. 291, 295, 922 P.2d 500, 503 (citation omitted).

¶23 Compas contends that her horn honking activities were "expressive conduct" which has long been recognized as protected speech under the United States Constitution. She cites to no authorities which support her position, however. To prevail on her "as applied" challenge to § 45-8-101, MCA, Compas must prove that her horn honking activities are constitutionally protected. See State v. Helfrich (1996), 277 Mont. 452, 458, 922 P.2d 1159, 1163. She has not done so with regard to her "expressive conduct" contention.

¶24 Nor is Compas' reliance on Ytterdahl in this regard well placed. There, we emphasized that the defendant's actions involved protesting to his government an allegedly unlawful act of his government. Ytterdahl, 222 Mont. at 262, 721 P.2d at 760. Compas' conduct in the present case is of an entirely different type. She was not exercising her right to protest to her government and she was not protesting any allegedly unlawful act by her government or, indeed, by anyone. Thus, Ytterdahl does not support Compas' position here.

¶25 The right to free speech is not absolute. City of Billings v. Batten (1985), 218 Mont. 64, 69, 705 P.2d 1120, 1124 (citation omitted). Indeed, "[t]here are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problems." State v. Lance (1986), 222 Mont. 92, 102, 721 P.2d 1258, 1265 (citation omitted). One of those classes of speech not protected by the First Amendment is activity intended to embarrass, annoy or harass. Helfrich, 277 Mont. at 460, 922 P.2d at 1164 (citations omitted).

¶26 Here, Compas' horn honking activities clearly annoyed and harassed the Libbeys and their guests at the RV Park and, on the face of it, could not have been intended otherwise. Thus, while Compas asserts that her intent was "to protest the location of the RV Park," her actions did not constitute a protest to government of government acts which would be entitled to protection under the First Amendment. Moreover, under these circumstances, Compas' "protest"--aimed at the Libbeys--had precisely the effect she intended: it disturbed their peace and that of their guests.

¶27  We conclude that the District Court correctly concluded that Compas did not establish a violation of her free speech rights.  Therefore, we hold that the District Court did not err in denying Compas' motion to dismiss the disorderly conduct charges.

¶28  Affirmed.

/S/  KARLA M. GRAY

We Concur:

/S/  J. A.  TURNAGE
/S/  JAMES C. NELSON
/S/  JIM REGNIER
/S/  W. WILLIAM LEAPHART