JUSTICE RICE
concurring in part, dissenting in part.
¶74 The Court concludes that Dugan’s statement did not constitute fighting words, is not punishable under the captive audience doctrine, is not a true threat, is not obscenity, and is “certainly not of high social value.” Opinion, ¶¶ 43, 44, 47, 48. Although the Court may have established what Dugan’s statement is not, I would like to discuss what it is and call it for what it is. My conclusion is based upon and limited to the specific facts of this case, of one person speaking directly and individually to only one other person who was duty-bound to receive communication, with no other intended audience.
¶75 As alleged, Dugan’s statement was a direct, individual, and personal attack upon Redmond-Sherrill. It was demeaning, degrading, and debasing. It included only words “which by their very utterance inflict injury.” Chaplinsky, 315 U.S. at 572, 62 S. Ct. at 769. It bore “no essential part of any exposition of ideas.” Chaplinsky, 315 U.S. at 572, 62 S. Ct. at 769. It was utterly without any social value whatsoever. It truly constitutes, as used here and in this context, “no part of the expression of ideas.” R. A. V., 505 U.S. at 385, 112 S. Ct. at 2544 (emphasis in original). It had only one purpose: to injure and abuse Redmond-Sherrill, to reduce her human dignity to nothing more than a sexual act or a sexual body part. “Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument.” Chaplinsky, 315 U.S. at 572, 62 S. Ct. at 769.
¶76 The Court correctly notes that the Supreme Court offered a clarifying statement in Stevens about descriptions of speech it had used in previous cases. The Supreme Court stated that such descriptions were not generally applicable tests that “permit the Government to imprison any speaker so long as his speech is deemed valueless or unnecessary, or so long as an ad hoc calculus of costs and benefits tilts in a statute’s favor.” Stevens,_U.S. at_, 130 S. Ct. at 1586. It is important to note, however, that Stevens was addressing something far different from the issue here. The federal statute at issue in Stevens criminalized depictions of animal cruelty with such “alarming [definitional] breadth” that pictures of big game hunting could have been outlawed. Stevens,_U.S. at_, 130 S. Ct. at 1588-89. The Government defended the challenge by offering the likewise *67 incredibly broad argument that “depictions of animal cruelty, as a class, are categorically unprotected by the First Amendment.” Stevens, _ U.S. at _, 130 S. Ct. at 1584. It was in response to the Government’s unbridled argument, which the Supreme Court characterized as a new “free-floating” First Amendment test that was “startling and dangerous,” Stevens,_U.S. at_, 130 S. Ct. at 1585, that the Court distinguished some of its previous comments. However, in doing so, it did not overrule Chaplinsky, which it neither discussed nor directly quoted in this context, or any other previous case. Stevens, _U.S. at_, 130 S. Ct. at 1585-86. Rather, it reaffirmed the concept that certain speech has been “historically unprotected,” and noted that “ ‘[i]t rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute.’ ” Stevens, _ U.S. at_, 130 S. Ct. at 1586 (internal citation omitted).
¶77 It is unnecessary here to engage in the type of “ad hoc calculus of costs and benefits” offered by the Government in Stevens, which the Supreme Court rejected. There is no necessity of weighing Dugan’s statement against “the social interest in order and morality,” Chaplinsky, 315 U.S. at 572, 62 S. Ct. at 769, because under the facts of this case it holds no weight at all. On its face, the statement offered absolutely no social value, and no justification whatsoever can be offered for it. It communicated no thought or expression to any audience or any person beyond Redmond-Sherrill, who was on the phone with Dugan pursuant to her public duty. The statement was, as alleged, intended to be personally injurious only to her. The right of free speech should not extend to Dugan’s individually directed, personally debasing, and injurious statement to duty-bound RedmondSherrill that had no part of any exposition of ideas. R. A. V., 505 U.S. at 385, 112 S. Ct. at 2544.
¶78 Dugan could have sought to verbally injure Redmond-Sherrill without using “obscene, lewd, or profane language,” and he would not have violated the criminal statute. Section 45-8-213(l)(a), MCA. Or, he could have used these particular words without intending to injure Redmond-Sherrill, and he likewise would not be guilty of violating the statute. However, as alleged, if he used these words and intended to injure Redmond-Sherrill, then he used his speech “as an integral part of conduct in violation of a valid criminal statute,” for which the Supreme Court has approved criminal sanction. Stevens,_U.S. at _, 130 S. Ct. at 1586. Thus, Dugan’s motion to dismiss was properly *68 denied.
¶79 “The right to free speech is not absolute.” State v. Compas, 1998 MT 140, ¶ 25, 290 Mont. 11, 964 P.2d 703. We have often quoted Chaplinsky, as quoted at Opinion, ¶ 18, as the basis that the First Amendment does not protect all speech. See O’Shaughnessy, 216 Mont. at 438, 704 P.2d at 1024; Lance, 222 Mont. at 102, 721 P.2d at 1265; State v. Cooney, 271 Mont. 42, 48, 894 P.2d 303, 307 (1995); State v. Helfrich, 277 Mont. 452, 460, 922 P.2d 1159, 1164 (1996); Nye, 283 Mont. at 512-13, 943 P.2d at 101; Robinson, ¶ 18. All 50 states, the District of Columbia, and the federal government have some form of criminal statute prohibiting harassing or obscene communication through the telephone. Josh Tatum, First Amendment Center, Telephone-harassment statutes, http://www.firstamendmentcenter.org /telephone-harassment-statutes (accessed Jan. 25, 2013); American Law Institute, Model Penal Code and Commentaries: Official Draft and Revised Comments, § 250.4 cmts. at 360 (1980). In Montana, we have previously held that harassment and intimidation fall outside the protection of the First Amendment, independent from analyses examining whether the words were unprotected “fighting words,” obscenity, or threats, or were made to a captive audience. See e.g. Cooney, 271 Mont. at 49, 894 P.2d at 307 (“free speech does not include the right to cause substantial emotional distress by harassment or intimidation.”); Nye, 283 Mont. at 513, 943 P.2d at 101 (“[ajctivities which are intended to embarrass, annoy or harass ... are not protected by the First Amendment.”). Further, the Montana Constitution provides that “[e]very person shall be free to speak or publish whatever he will on any subject, being responsible for all abuse of that liberty.” Mont. Const, art. II, § 7 (emphasis added).
¶80 Dugan chose to speak in a manner that was as debasing, injurious, and abusive as can be spoken in our society, in a direct, personal, and individual attack on a public employee who was duty-bound to receive communications from Dugan. I would hold that Dugan’s speech was integral in harassing Redmond-Sherrill, as “an activity illegal throughout the Nation,” and is “a previously recognized, long-established category of unprotected speech” by this Court. Stevens,_U.S. at_, 130 S. Ct. at 1586. Dugan’s words should be deemed unprotected speech and he should now be held “responsible for all abuse of that liberty.” Mont. Const. art. II, § 7.
¶81 As to Issue 2, whether the statute is overbroad, the Court today strikes the prima facie language in § 45-8-213, MCA. However, a narrow application would be more appropriate where the prima facie *69 evidence at issue is similar to other mental state requirements. To remedy the problem that a statute may not set forth a prima facie intent provision to conclusively prove the defendant’s mental state, see Black, 538 U.S. at 366-67, 123 S. Ct. at 1551-52,1 would construe the prima facie evidence sentence in § 45-8-213, MCA, as permissive rather than mandatory. This Court presumes that statutes enacted by the Legislature are constitutional and we “must adopt a construction of the statute which renders the statute constitutional in preference to one which renders it invalid.” Helfrich, 277 Mont. at 454, 922 P.2d at 1160 (citations omitted).
¶82 In Richards, the Idaho Court of Appeals upheld Idaho’s telephone harassment statute against a facial overbreadth challenge. Richards, 896 P.2d at 363. The court stated the defendant’s overbreadth argument failed because the statute did “not prohibit the mere expression of ideas or information. Telephone calls made with a legitimate intent to communicate are not criminalized. Rather, the statute prohibits only telephone contacts made with a specific and exclusive intent to ‘annoy, terrify, threaten, intimidate, harass or offend.’ ” Richards, 896 P.2d at 362.[1] The court said those being accused of violating the statute “must be shown to have formulated the specific harmful intent to annoy, terrify, threaten, intimidate, harass or offend in order to be guilty, they cannot be heard to complain that they did not understand the mental element of the crime.” Richards, 896 P.2d at 365.
¶83 Likewise, instead of striking the language, I would construe the language of the prima facie evidence in § 45-8-213, MCA, as a permissive inference rather than as a mandatory presumption. The state would need to prove that the defendant formulated the specific intent “to terrify, intimidate, threaten, harass, annoy, or offend” in order to be proven guilty. This approach would follow our mandate to uphold legislative enactments while adopting an interpretation of the statute that is constitutional.
¶84 I concur in the Court’s resolution of Issue 3.
¶85 I would affirm.

 Idaho’s statute also includes a provision stating, “[t]he use of obscene, lewd or profane language or the making of a threat or obscene proposal, or the making of repeated anonymous telephone calls as set forth in this section may be prima facie evidence of intent to annoy, terrify, threaten, intimidate, harass or offend.” Idaho Code § 18-6710(2) (2012).