JUSTICE McKINNON,
dissenting.
¶30 The Court creates an exception to the “structured analysis,” Opinion, ¶ 21, which our jurisprudence has long recognized and carefully employed in defamation proceedings. In doing so, the Court obscures distinctions between the functions of a jury and a judge and decides the quintessential issue of fact—truthfulness of the statements—which is committed to the sound discretion of the jury.
¶31 To begin, I disagree with the Court’s characterization of Appellants’ arguments: that is, that the statements are false because they arise from the possibility that certain individuals participated in the criminal conduct to differing extents. Opinion, ¶ 26. We state: “Appellants do not contest the facts relating to what occurred at the Rest Area, nor do they contest that the conduct at issue occurred while they were at the Rest Area.” Opinion, ¶ 26. The Court makes inferences and judgments regarding the falsity of the statements which are inappropriate and should be made by a jury. There is little doubt that the particular facts underlying these proceedings are convoluted and far from clear. Indeed, this is likely the reason the charges were ultimately dismissed. Nonetheless, that is precisely why falsity of the statements should be left to the jury’s judgment and decision. Nothing in the record establishes what any particular individual did; thus, this Court takes a giant leap when it concludes otherwise by declaring the statements were true. Had the record overwhelmingly and definitively established the truthfulness of the statements, then perhaps the Court’s actions would be more reasonable, provided other aspects of the “structured analysis” had been followed. However, the inability to “confirm or deny” does not establish as a matter of law, or overwhelmingly, the truthfulness of the statements. Moreover, Appellants have consistently maintained that the statements made by the Independent-Observer were false. More specifically,
Flesch denies defacing any wall or windowsill at the rest area in any way and Hagman and Lee both deny having witnessed such conduct. Likewise, evidence on record does not support that any of the Appellants scratched or punched holes in the walls or windowsills. Finally, Winters testified that while she cleaned the rest area afterward, she did not find urine “in an inappropriate place.”
Appellants’ Reply Br., pp. 10-11. The Independent-Observer called Appellants “criminals” and “vandals” and accused Appellants of *364 physically destroying the Rest Area. Although in the context of the criminal investigation Appellant elected to remain silent, Appellants aver in the instant proceeding that these statements are not true. Appellants denied committing acts of vandalism and obstruction of justice, which the Independent-Observer accused them of committing. Indeed, the City of Conrad ultimately dismissed all charges. Importantly, none of the individuals, as of the publishing dates of the articles, had been charged with a crime. The Court fails to appreciate, first, that Appellants deny the Independent-Observer’s statements they were “criminals” and “vandals,” that they defaced the walls and urinated on the floors, and that they were “breakers of the law.” Second, the statements accused Appellants of having committed crimes prior to Appellants being charged with any offenses. As such, the statements contained undisclosed facts which Appellants maintain could be proven false. While I appreciate the Court’s eagerness to conclusively determine that the statements were true, the evidence of their truthfulness is not so overwhelming and clear that a jury should be precluded from determining which of the two permissible views ought to be accepted.
¶32 Montana’s Constitution provides that “[i]n all suits and prosecutions for libel or slander the truth thereof may be given in evidence; and the jury, under the direction of the court, shall determine the law and the facts.” Mont. Const. art. II, § 7, (emphasis added). In Griffin v. Opinion Publishing Co., 114 Mont. 502, 512, 138 P.2d 580, 586 (1943), overruled on other grounds by State v. Helfrich, 277 Mont. 452, 922 P.2d 1159 (1996), we explained the meaning of “under the direction of the court” and concluded that “the decisions clearly show that the function of the court and jury is not greatly different in the trial of libel from what it is in other cases.” We held that “it is for the court and not the jury to pass upon demurrers to the complaint; upon the admissibility of the evidence; upon motions for nonsuit; upon motions for directed verdict; upon motions for a new trial and upon motions to set aside verdicts or vacate judgments.” Griffin, 114 Mont. at 512, 138 P.2d at 586.[1] Accordingly, unless “the evidence is ‘so *365 overwhelming that any other conclusion would be unreasonable,’ the issue of whether the statements were true or false is a determination for the jury alone to make.” Hale, ¶ 18.1 do not find the evidence of the truth or even substantial truth of the Independent-Observer’s statements and undisclosed facts to be so overwhelming that it should be removed from consideration by a jury. In my opinion, the Court oversteps its role in concluding otherwise.
¶33 Perhaps a reminder of what the Restatement (Second) of Torts (1965) provides would be helpful. Section 614 explains:
(1) The court determines
(a) whether a communication is capable of bearing a particular meaning, and
(b) whether that meaning is defamatory.
(2) The jury determines whether a communication, capable of a defamatory meaning, was so understood by its recipient.
Pursuant to this rule, the determination of whether the communication is capable of bearing the meaning ascribed to it by the plaintiff, and whether the meaning so ascribed is defamatory, is for the court to decide when reasonable minds cannot differ. If reasonable minds could differ as to the defamatory character of the statements, then the matter is left for decision by a jury. However, if the court decides that no reasonable person could conclude against the plaintiff upon either of these issues, then there is no further question for the jury to decide. *366 If the court determines that the communication is both capable of bearing the meaning in question, and that it is defamatory, “there is then the further question for the jury, whether the communication was in fact understood by its recipient in the defamatory sense.” See Restatement (Second) of Torts, § 614, cmt. B; see also Hale, ¶ 17, McConkey, ¶ 44, Griffin, 114 Mont. at 512, 138 P.2d at 586.
¶34 Applying the foregoing to the issue of whether the District Court correctly granted summary judgment for the Defendants limits the Court’s role to preliminarily deciding whether the communication is capable of bearing the meaning ascribed and whether it is defamatory. I disagree with the Court when it provides an exception to this “structured analysis” long employed in defamation proceedings and decides to begin its inquiry with whether the statements themselves are truthful. Opinion, ¶ 21. It is inappropriate for the Court to first decide whether the statements are true. That question is left for a jury to determine after the court has concluded that the statements may have the ascribed meaning and may be defamatory.
¶35 Thus, the only question with which this Court should be concerned is whether reasonable minds could differ regarding the meaning ascribed by the statements and whether the statements are defamatory. Here, because no special damages were pled in the complaint, the underlying cause of action must be deemed an action for libel per se. In addressing whether statements are defamatory and have the meaning ascribed to them, we have stated that,
the defamatory words [must] be construed according to their usual, popular and natural meaning and their common acceptance in society; the words must also be viewed by the court without the aid of special knowledge possessed by the parties concerned; the words must be susceptible of only one meaning and that meaning must be opprobrious; and the words must also be construed in their entirety and with reference to the entire document.
Tindal v. Konitz Contracting, 240 Mont. 345, 355, 783 P.2d 1376, 1382 (1989) (citing Wainman v. Bowler, 176 Mont. 91, 94, 576 P.2d 268, 270 (1978)).
¶36 After reviewing the pleadings and record in this case, I would determine that the Second Article published by the Independent-Observer, when viewed without the aid of special knowledge, contains words that are defamatory in their usual, popular and natural meanings, and ⅛ subject to only one “opprobrious” meaning. Further, I would determine that the statements contained within the Second Article do not consist entirely of sarcastic or hyperbolic statements. As noted, the “words must also be construed in their entirety and with *367 reference to the entire document.” This rule requires that we consider, in concert, all three of the articles published by the Independent-Observer. This conclusion is in line with our previous decisions in cases involving defamatory libel. See Wainman, 176 Mont. at 95, 576 P.2d at 270 (where this Court considered a series of articles in their entirety in order to find that the statements contained therein were not defamatory). I therefore would determine that the publications at issue are capable of bearing the ascribed meaning and of being defamatory. ¶37 We have also stated that to be defamatory, the “allegedly libelous statements must be aimed specifically at the person claiming injury.” McConkey, ¶ 47; accord Wainman, 176 Mont. at 95-96, 576 P.2d at 270. We have interpreted this rule as requiring that “a plaintiff must show that people in the community other than the plaintiff perceived the statement to refer to the plaintiff.... [T]he test is neither the intent of the author nor the recognition of the plaintiff himself that the article is about him, but rather the reasonable understanding of the recipient of the communication.” Granger v. Time, Inc., 174 Mont. 42, 49-50, 568 P.2d 535, 540 (1977) (internal quotations omitted). Particularly relevant to the determination here is the single, common thread with which the articles begin. The articles state, in relevant part: “Friday evening four individuals, allegedly from Shelby, were caught vandalizing the new rest area just off the north exit off of 1-15”; “It’s been a month now since four ‘gentlemen’ allegedly from Shelby, and I use that with a great deal of sarcasm, stopped in at the new rest area just off of 1-15”; and “Two of four men from Shelby have been charged in the vandalism case at the new state-of-the-art rest stop just off of 1-15. Matthew Flesch, age 21 ... and Robert Lee, age 38.” (Emphasis added.) Read together, I would find that a reader of the three articles could reasonably understand that the articles, as a whole, were aimed at Flesch and Lee. Further, we note that the absence of any reference to Hagman by name illustrates that the articles were not aimed specifically at him. I would find that the defamatory statements, viewed in the context of all three articles, were aimed specifically at Flesch and Lee, but not Hagman.[2]
*368 ¶38 The foregoing analysis must be interpreted in light of Article II, Section 7, of the Montana Constitution, which places the heart of any determination regarding defamatory libel directly within the province of the jury, subject only to determinations envisioned by the phrase “under the direction of the court.” While we have held that “there is no absolute prohibition against summary judgment in libel cases,” we emphasize that, due to the unique nature of cases involving libel, a district court should take particular care when evaluating such motions. Hale, ¶ 15. In my opinion, the circumstances here are remarkably similar to those in Hale where the plaintiff had been accused of being “most-wanted,” a “fugitive,” and “may be armed and dangerous.” Hale, ¶ 23. This Court determined that “[i]t is apparent from the record that the evidence is not so overwhelming that the statements were ‘essentially truthful,’ so as to preclude a jury from determining otherwise.” Hale, ¶ 21. The record contained evidence that Hale was neither a “most-wanted” suspect, nor a “fugitive” from justice; and thus the answer to the question of whether the information provided to the defendants was truthful was “far from conclusive.” Hale, ¶ 20.
¶39 I dissent from the Court’s decision to decide an issue of fact—truthfulness of the statements—which should have been submitted to the jury. I also disagree with this Court’s departure from well-reasoned and careful precedent which recognizes a structured analysis and procedure for protecting the distinct roles of the judge and jury in defamation proceedings.

 The Court in Griffin explained,
The law is as stated in Diener v. Star-Chronicle Pub. Co., 230 Mo. 613, 132 S.W. 1143, 1145, 33 L. R. A. (n. s.) 216, 217: “A demurrer lies to a petition sounding in tort for libel the same as to any other petition, if certain conditions are present—this, in spite of the constitutional provision (Article 2, sec. 14, of the Bill of Rights [Ann. St. 1906, p. 135]) that, in libel, ‘the jury, under the direction of the court shall determine the law and the facts.’ To illustrate: If A sue B for libel *365 without matter of innuendo or inducement on the theory that the words published are libelous per se, and they are not libelous per se, the sufficiency of A’s petition may be challenged by demurrer, and is for the court. Again, if A sue B for libel for words not actionable per se, and the pleader, claiming they bear a hidden or latent libelous meaning because of certain extrinsic circumstances, sets such extrinsic circumstances forth by prefatory allegations by way of inducement and follows up the libelous words by an innuendo applying the words to the matter so pleaded by way of inducement, in such cases, such innuendo should not be a forced and unnatural construction and application of the words, but a reasonable and natural construction and application of them. A vice of that sort can be reached by demurrer, and is for the court. Again, if the words of the libel are ambiguous, and the pleader can only put a libelous tang or edge upon them by a wholly unnatural and forced construction and tries to do so by an innuendo, that vice can be reached by demurrer, and is for the court. So, if the petition be not challenged by way of demurrer, in limine, and the case be fully developed on trial, and if under the pleadings and evidence no case is made the court may take the case from the jury by a peremptory instruction in the nature of a demurrer. So far as above indicated, libel suits, though sui generis (in a sense), are subject to those rules of practice found wise and useful in administering justice generally in the courts.”
Griffin, 114 Mont. at 512-13, 138 P.2d at 586.

 Our precedent also requires that if we determine the publication is defamatory, we must consider whether the publication is privileged. See McLeod v. State, 2009 MT 130, ¶ 21, 350 Mont. 285, 206 P.3d 956 (citing Hale, ¶ 35). However, the purpose of my dissent is to address the Court’s usurpation of the jury’s role in this defamation proceeding and not to discuss any privilege in making the defamatory statement.